In a trial to the jury the defendant was convicted of the crime of criminal trespass in the first degree in violation of 53a-107[1]
of the General Statutes. The charge arose out of the defendant's refusal to leave the premises of Pratt and Whitney Aircraft in East Hartford after he had been ordered to leave by the chief of the security guards for Pratt and Whitney.
The defendant challenges his conviction, first, on the ground of failure of the court to charge that the state must establish ownership of the property in question. The defendant asserts that proof of ownership is an essential element of the statutory crime of criminal trespass in the first degree, that proof of anything less than title is insufficient and that the court erred in not so charging the jury. The defendant reasons that the offense is not committed unless one enters or remains on property after personally receiving an order to leave or not to enter from the owner of the property or a person authorized by the owner. The defendant argues that under General Statutes 1-1 words must be construed *Page 557 
according to their common usage, that according to such usage, the word "owner" means one who has legal title; Consolidated Diesel Electric Corporation v. Stamford, 156 Conn. 33, 38; and that the strict construction demanded of penal statutes requires that the word "owner" as used in this criminal trespass statute be given its narrow interpretation.
While it is true that penal statutes are to be construed strictly, they are not to be construed to the point of crippling the legislative intent. State v. Sober, 166 Conn. 81, 91. "The word `owner' has no fixed meaning but must be interpreted in its context and according to the circumstances in which it is used." Warren v. Borawski, 130 Conn. 676, 679. Its meaning may vary "from an absolute proprietary interest to a mere possessory right." Hope v. Cavallo, 163 Conn. 576,581. For example, a tenant is regarded as the owner of leased premises; Panaroni v. Johnson,158 Conn. 92, 108; even though the title is in the landlord.
Whether in this case "owner" is to be viewed broadly or narrowly depends on a number of factors apart from the usual rules for construing penal statutes. It should be remembered that criminal trespass statutes are not legislative novas and were not given birth in legislative incubators. They have a history, a purpose and a relationship and all of those facets must be examined in order to arrive at a proper construction of the word "owner."
Trespass involves an intrusion upon another's interest in the exclusive possession of land. 1 Restatement (Second), Torts 158. Unless the entry is made under a claim of right in the property, the offensive conduct involves an interference with another's possession, not an attack upon his title. Historically, the civil remedies for torts, including trespass, grew out of and were an incident to criminal *Page 558 
prosecutions for the same conduct. Prosser, Torts (4th Ed.) 1, p. 8. "The writs of trespass are closely connected with the appeals for felony. The action of trespass is, we may say, an attenuated appeal. The charge of felonia is omitted; no battle is offered; but the basis of the action is a wrong done to the plaintiff in his body, his goods or his land `by force and arms and against the king's peace.'" 2 Pollock and Maitland, History of English Law (2d Ed.), p. 526.
The state Penal Code contains three degrees of criminal trespass; General Statutes 53a-107,53a-108, 53a-109; all addressed to the same conduct, namely, the unauthorized act of entering or remaining in a building or on premises of another. The word "owner" does not appear in second[2] or third degree[3] criminal trespass. To follow the defendant's argument would require us to read it into those two statutes. To gain a conviction the state would have to prove not only that the owner did not authorize the intrusion but also that he was the rightful titleholder. The effect of that would permit all manner of intrusions on private property in the exclusive possession of someone other than the titleholder. That would produce the anomalous result that one in exclusive possession of land could protect his interest against intrusions by trespassers only by recourse to costly civil litigation whereas a titleholder with no right to immediate possession *Page 559 
could simply call the police. We cannot assume that the legislature intended so bizarre a result. We, therefore, invoke the rule that "[W]hen one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid." Bridgeman v. Derby,104 Conn. 1, 8.
Giving the word "owner" a broad meaning not only carries out the presumed legislative intent that existing relevant statutes be read so as to make one consistent body of law; State v. White,169 Conn. 223, 234; but, of equal importance, permits the statute to serve its legislative purpose, namely, to protect any possessor of land, whether titleholder or not, from intrusions by unwanted persons.
 II
The defendant also challenges his conviction as a violation of his constitutional rights of free speech, of due process of law and to petition for redress of grievances. These issues not having been raised before the trial court either by an appropriate motion, request to charge or exception taken to the charge, we are now bound to consider them. State v. Williams, 169 Conn. 322, 333. The fact that the defendant chose to represent himself at the trial does not relieve him of the responsibility of raising at the trial court level, however informally, issues which he desires to pursue on appeal. Connecticut Light Power Co. v. Kluczinsky, 171 Conn. 516, 520. This rule applies even when the claim is of a constitutional nature. State v. Evans, 165 Conn. 61, 69.
The defendant asserts further that the incident which resulted in his arrest arose out of state action. Although the defendant does not make the point precisely, subsumed in this assertion is the further claim that the defendant's situation brings his case *Page 560 
within one of the exceptional circumstances referred to in State v. Evans, supra, 70, namely, "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." The threshold question, then, is whether the record adequately supports the claim of "state action" because, if it does not, there is no basis for invoking the Evans exception.
It is undisputed that the public was invited to the Pratt and Whitney property for the purpose of seeing and inspecting all of the aircraft and aircraft engines on display. It does not follow from this that upon entry they carried with them the full panoply of constitutional rights which would have been available to them in public streets, parks and playgrounds. The mere fact that the premises were open to the public did not work a change in their private character. Lloyd Corporation v. Tanner, 407 U.S. 551, 569. Since the property was private, the possessor had a right to determine whom to invite, the scope of the invitation and the circumstances under which the invitation was to be revoked without being limited in any way by the rights of free speech and assembly guaranteed by the first and fourteenth amendments to the constitution of the United States. Lloyd Corporation v. Tanner, supra, 567. So long as the private action does not constitute state action, it is not subject to constitutional oversight. Ibid.
Whether certain activity can be considered state action depends on whether the state has so far insinuated itself into a position of interdependence with the private person that it must be recognized as a joint participant in the challenged activity. Burton v. Wilmington Parking Authority, 365 U.S. 715,725; Holodnak v. Avco Corporation, 514 F.2d 285, *Page 561 
288 (2d Cir.). In this case the only evidence of governmental involvement in the air show at Pratt and Whitney was the presence of some military aircraft on the field. Government or state action will not be found where the government involvement is insignificant. The loan of military aircraft for the limited purpose of inspection at the air show does not create a sufficiently close nexus as to constitute "state action." Stearns v. Veterans of Foreign Wars, 394 F. Sup. 138, 144 (D. D.C.).
The defendant also points to the presence of the prosecutor and police officers at the air show and suggests that the defendant's arrest under those circumstances constituted state action. Obviously, whenever a police officer makes an arrest the government is directly involved. The challenged activity, however, was not the arrest but the order to leave. Had the order been mandated by state statute or a local ordinance, under the circumstances of this case we would have been faced with an entirely different constitutional issue. See Peterson v. Greenville, 373 U.S. 244. But that is not this case. The order to leave in this case having been given by personnel of Pratt and Whitney, the offense was complete when thereafter the defendant remained on the premises. At that point the defendant was subject to arrest. The fact that the police, in an effort to avoid an arrest, requested the defendant to leave the premises peaceably did not convert the prior private order to one involving government action.
 III
The defendant challenges the court's charge respecting affirmative defenses. Because the defendant filed no request to charge and took no exception to the charge on this point we are not required to consider it. State v. Van Valkenburg, 160 Conn. 171, *Page 562 
174. Our procedure "does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal." State v. Taylor, 153 Conn. 72, 86. This rule applies to both represented and pro se litigants, the only difference being that in the case of pro se litigants where the challenge will not interfere with the just rights of the other party it will be considered if the issue is raised in a timely fashion, however informally. Connecticut Light 
Power Co. v. Kluczinsky, 171 Conn. 516, 520. The defendant in this case chose to exercise his constitutional right to represent himself. Faretta v. California, 422 U.S. 806, 836. He did so with his eyes wide open. At the outset of the trial the trial judge observed that he understood that the defendant wanted to try his own case, to which the defendant responded, "I have been warned several times about the possible consequences of that, but I am willing to run the risk." The right of self-representation does not give the pro se litigant a constitutional license not to comply with relevant rules of procedural and substantive law. Faretta v. California, supra, 834 n. 46. It is apparent from the record that the defendant is an intelligent, knowledgeable, articulate spokesman. We see no reason to apply a different set of rules to him merely because he now chooses to be represented on appeal by an intelligent, knowledgeable, articulate attorney.
We shall, however, examine the charge for the limited purpose of determining whether it violated the defendant's constitutional rights in respect to the affirmative defenses. Because the exception taken to the charge was limited to the question of proof of ownership we shall assume, except for the *Page 563 
present inquiry, that the charge as given was otherwise correct in law. State v. LaBreck,159 Conn. 346, 348. General Statutes 53a-110[4]
establishes a number of such defenses to prosecution for criminal trespass. With respect to those defenses, the court charged the jury that if they found that the premises were open to the public and that the defendant complied with all lawful conditions or if they found that the defendant believed he was licensed or would have been licensed to enter or remain in the building or premises they must return a verdict of not guilty. The defendant argues that the court's failure to charge the jury that the burden was on the state to negate those defenses beyond a reasonable doubt constituted constitutional error.
Because General Statutes 53a-12 imposes on defendants the burden of establishing affirmative defenses by a preponderance of the evidence it does not thereby become constitutionally vulnerable. "[T] he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the non-existence of all affirmative defenses has never been constitutionally required." Patterson v. New York, 432 U.S. 197,210. The essential elements of the crime charged here are (1) that the defendant was ordered to leave certain private premises, (2) that the order was personally communicated to him by an authorized person and (3) that after receiving *Page 564 
the order the defendant remained on the property with the knowledge that he was not privileged or licensed to do so. None of the affirmative defenses shifts the burden of establishing any of these elements to the defendant. It is only in the latter situation that they would be invalid under the constitutional principles enunciated in Mullaney v. Wilbur, 421 U.S. 684, and in In re Winship, 397 U.S. 358. In the absence of a shift of the burden of persuasion, the due process clause does not require that the state disprove any and all affirmative defenses. We, therefore, find no basis in the record for holding that the charge clearly deprived the defendant of a fundamental constitutional right and fair trial. State v. Evans, 165 Conn. 61.
 IV
The defendant challenges the actions of the prosecutor in two respects. First, he contends that the prosecutor should not have tried the case because he was an eyewitness to the events which led to the defendant's arrest. A lawyer who is a potential witness is not disqualified from prosecuting a case if it is unlikely that he will be called as a witness. Code of Professional Responsibility, EC 5-10. It is therefore surprising that the defendant would pursue this claim in view of his statement to the jury panel before the commencement of the trial that he did not intend to call the prosecutor as a witness. The defendant's second point is that in his summation the prosecutor injected his own personal views even though he was not a witness. The defendant's characterization of the prosecutor's remarks are not quite accurate. Statements were made by the prosecutor to one of the defendant's witnesses shortly after the arrest. Over the prosecutor's objection, the defendant elicited these statements from the witness. The prosecutor in his summation referred to these *Page 565 
statements and commented on them. The prosecutor's remarks, when viewed in context, could hardly be described as prejudicial.
Finally, the defendant challenges the admission of certain evidence involving misconduct of others and actions by the Federal Bureau of Investigation (F.B.I.). The misconduct, which involved spraying paint and spilling blood on military aircraft, occurred after the defendant was arrested. The defendant's objection is that the evidence was not only irrelevant but also highly prejudicial. Any claimed error with respect to the court's ruling was, however, rendered harmless by the reception into evidence of the defendant's exhibit which contained a detailed report of the incidents related in the state's earlier testimony. State v. Williams, 169 Conn. 322, 332. The ruling respecting the actions of the F.B.I. was proper. The defendant questioned a Pratt and Whitney security officer about the role of the F.B.I. at the air show, the implication of the questions suggesting an active role by a federal agency in the conduct of the air show. In response the state had a right to show that government property had in fact been damaged and that the F.B.I. role was limited to an investigation of this damage.
 There is no error.
In this opinion A. HEALEY and SPONZO, Js., concurred.