[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are the Town of Berlin and Roger Gaudio, in his capacity as zoning inspector of the Town of Berlin. Plaintiffs initially brought this action against the defendants, Thomas and Barbara Gerdis, seeking reimbursement for monies expended by the Town in removing personal property from the defendants' land on Bishop's Curve, Berlin, Connecticut. CT Page 542
The plaintiffs in this case filed an amended complaint dated February 8, 1990, adding to the allegations contained in the original verified complaint dated June 20, 1989, a second count seeking to foreclose a certain mortgage and related relief. The parties are agreed that the court here will determine whether or not a decree of Foreclosure should issue. In the event the court decides to decree a foreclosure and finds the amount of the debt due, remaining and related issues i.e. costs, fees, strict foreclosure or by sale and appointments, if in order, and the like customarily determined in any foreclosure proceeding, it is agreed, shall be decided as a regular short calendar matter after a judgment is rendered in the case before the court.
On July 19, 1989 the defendants filed their answer and Special Defense and Counterclaim. By their special defense they claim that the execution of the compliance agreement was not a legally binding agreement by the Town of Berlin and that the compliance agreement was unconscionable and void as a matter of public policy in that the Town of Berlin was the sole arbiter of what constituted a default.
The defendants' counterclaim was originally in three counts and amended thereafter by adding a fourth. (See Pleadings #106, #107, and orders endorsed thereon, #109 and 7-17-89 order on file jacket). The parties, accordingly, were heard by the court.
Presently, as previously indicated, this action is in two counts. The plaintiffs seek only to recover on the second count, i.e. to foreclose on a certain mortgage.
On December 15, 1986, defendant Thomas Gerdis was notified by the Town of Berlin that he was illegally storing unsightly building materials, unregistered motor vehicles and debris on residential property located at Bishop's Curve, Berlin, Connecticut. He was warned that unless he corrected the violation a lawsuit would be commenced to force him to clean the property.
When Thomas Gerdis neglected and/or refused to correct the violations, a lawsuit was commenced by the Town of Berlin Zoning Enforcement Officer against Thomas and Barbara Gerdis alleging violation of the Berlin Zoning Regulations, sections 4.01, 4.10 and 4.11. The action, seeking an injunction requiring Thomas Gerdis to clean up the property was brought. This lawsuit, CV 87-0426436, (Nick Chirico, Building Zoning Enforcement Officer of the Town of Berlin v. Thomas Barbara Gerdis) which this court has taken judicial notice of, was CT Page 543 scheduled for trial on February 2, 1988.
On February 2, 1988, the Town of Berlin and Thomas Barbara Gerdis appeared for trial. Before court was to have been convened they agreed to settle the case without the necessity of trial. In furtherance thereof they executed a compliance agreement and a mortgage deed securing the performance of the agreement. Roger Gaudio, the then Zoning Enforcement Officer of the Town of Berlin, acting in his official capacity, executed the agreement on behalf of the Town of Berlin. The agreement, inter alia, reads as follows:
COMPLIANCE AGREEMENT BETWEEN
 THOMAS AND BARBARA GERDIS AND THE TOWN OF BERLIN
 WHEREAS, Roger Gaudio, the Zoning Enforcement Officer of the Town of Berlin charged with enforcement of the zoning regulations of the Town of Berlin, enters into this agreement in his official capacity.
 WHEREAS, Thomas and Barbara Gerdis are the owner of certain premises known as Block 141, Lot 9A Bishop's Curve in the Town of Berlin more particularly bounded and described as follows:
A certain piece or parcel of land . . . .
 WHEREAS, said property on Bishop's Curve owned by Thomas and Barbara Gerdis is currently violating zoning regulations Ordinances of the Town of Berlin by virtue motor vehicle parts, tires, unsightly materials and other junk being stored and/or accumulated on said property.
 WHEREAS, the Town of Berlin has commenced suit in Connecticut Superior Court, Berlin Building and Zoning Enforcement Officer v. Thomas A. Gerdis, et al., CV 87-0426436, Judicial District of Hartford/New Britain at New Britain, to effectuate abatement of said zoning and ordinance violations.
 WHEREAS, Thomas and Barbara Gerdis are willing to cure said zoning violations by removing all materials which constitute said violations.
WHEREAS, the Town of Berlin is willing to CT Page 544 withdraw said lawsuit against Thomas and Barbara Gerdis.
 NOW THEREFORE, IN CONSIDERATION OF THE MUTUAL COVENANTS AND AGREEMENTS CONTAINED HEREIN, IT IS HEREBY AGREED BETWEEN THOMAS AND BARBARA GERDIS AND THE TOWN OF BERLIN AS FOLLOWS:
 1. In consideration of the Town of Berlin's withdrawal of the lawsuit Berlin Building and Zoning Enforcement Officer v. Thomas A. Gerdis, et al., CV 87-0426436, and other good and valuable consideration, Thomas and Barbara Gerdis hereby agree as follows:
 A. Thomas and Barbara Gerdis will remove all motor vehicle parts, tires, unsightly materials and other junk which violates the Berlin Zoning Regulations and Town of Berlin Ordinances on or before September 1, 1988.
 B. Thomas and Barbara Gerdis will execute a mortgage deed in the amount of $15,000.00 in favor of the Town of Berlin, to property known as Block 141, Lot 9A Bishop's Curve, Berlin, CT., on date even herewith. Said mortgage will serve as a Performance Bond to guarantee the performance of the promises and covenants in paragraph No. 1A herein.
 2. In consideration of Thomas and Barbara Gerdis bringing said Bishop's Curve property in compliance with the Berlin Zoning Regulations, and other good and valuable consideration, the Town of Berlin will withdraw said lawsuit No. CV 87-0426436.
 3. The performance of this Agreement by Thomas and Barbara Gerdis is secured by mortgage on said Bishop's Curve property. Should said property not be in compliance with the zoning regulations and ordinances of the Town of Berlin by September 1, 1988, the Town of Berlin is hereby authorized to unilaterally cure all violations and charge Thomas and Barbara Gerdis for such work. Should Thomas and Barbara Gerdis not pay for said work within 30 days of the billing date they will be in default and the Town of Berlin can immediately foreclose on said mortgage up to the value of monies owned for said work.
4. The Town of Berlin shall be entitled CT Page 545 to collect all expenses incurred in pursuing foreclosure of said mortgage, including, but not limited to, reasonable Attorneys' fees.
Signed this 2nd day of February, 1988.
 Witnessed by: /s/ Laraine Stohl /s/ Thomas Gerdis /s/ E. Timothy Sullivan, Jr. /s/ Anthony A. Dalfino /s/ E. Timothy Sullivan, Jr. /s/ Barbara Gerdis /s/ Laraine Stohl /s/ Roger Gaudio /s/ E. Timothy Sullivan, Jr. Zoning Enforce. Officer For the Town of Berlin
Between February 2, 1988, and September 1, 1988, Roger Gaudio continually monitored the subject property on Bishop's Curve. No demonstrable progress was ever made. After September 1, 1908, Mr. Gaudio continued to work with Thomas and Barbara Gerdis by permitting them extra time to complete the clean up. After their repeated promises were broken and a number of excuses given as to why they could not or would not clean the property, this action, under the terms of the compliance agreement, and mortgage was brought.
On February 23, 1989, notice was sent to Thomas Gerdis that the Town intended to bring the property into compliance with the zoning regulations by cleaning up the property pursuant to the compliance agreement. The letter requested that Thomas Gerdis produce proof that he had contracted with a firm to cleanup the property and informed him that should no proof be forthcoming the Town would hire a contractor to clean up the property.
When Gerdis failed to respond to the February 23, 1989 letter, the Town contacted contractors to clean up the property. By letter dated March 13, 1989, Manafort Bros., Inc. submitted a proposal. Sometime after the Town solicited proposals, but before Manafort responded, Thomas Gerdis, by letter to Mayor Peters of the Town of Berlin, dated March 11, 1989, acknowledged that the property needed to be cleaned up and that it was a big job. The letter also stated that clean up would begin April 1, 1989.
Because Mr. Gerdis stated that he would begin to clean the property on April 1, 1989, the Town once again granted more time to Gerdis. On May 9, 1989, however, Roger Gaudio inspected the property and found that the property was in worse condition than previously noted. Mr. Gerdis claimed that he had removed twenty-five truckloads. This court gives CT Page 546 that claim no credence. Gerdis continued to move material onto the property.
By letter dated May 16, 1989, Gerdis notified Mayor Peters that he intended to have an auction of June 4, 1989. Based on that representation, Gerdis was granted another extension to June 12, 1989. On June 8, 1989, Gaudio again inspected the property and found that it was still in violation of the zoning regulations. A clean up date was set for June 12, 1989. The clean up on June 12, 1989, was, however, rescheduled for June 19, 1989. Thomas Gerdis was apprised of the Town's intention and timetable.
On June 19, 1989, Manafort Bros., Inc., at the Town's direction, commenced clean up of the Bishop Curve property. Both Roger Gaudio and James Manafort took special care to prevent disposing of or destroying anything which had value. James Manafort, testifying as both an occurrence witness and an expert witness by virtue of his more than 30 years in the demolition business, transferred two laborers from another job to the Thomas and Barbara Gerdis property to sort through the material and separate out items which had any value whatsoever. Nothing of value was removed from the property.
On June 20, 1989, Roger Gaudio and James Manafort returned to the property to resume the clean up. Thomas Gerdis, however, prevented access to the property and the Town cancelled the clean up for that day and filed this action to enjoin Thomas and Barbara Gerdis from denying the Town access to the property to effectuate the same. In this case, the Town claimed the right to enter the property for the purpose of cleanup pursuant to the compliance agreement. A hearing on an order to show cause why a temporary injunction should not issue was scheduled for July 3, 1989 and thereafter for July 17, 1989.
This file contains an entry which reads as follows:
 7/17/89 ORDER: Temporary injunction issued in accordance with stipulation of the parties. Property shall comply with all town ordinances and zoning regulations by August 1, 1989. If defendant property is not in compliance by August 1, 1989, the defendant will be in contempt of court and subject to a fine of $100.00 (One hundred) dollars per day until the violations are cured. If the town discovers violations after August 1, 1989, it shall notify the defendant of such violations within three working days.
CT Page 547
 (Aronson, J.) /s/ M. Moser, Asst. Clerk (L. Stohl Reptr.) JDMD 7-18-89
Gerdis did not clean up the property. On August 3, 1989, the Town wrote to Gerdis as follows:
Dear Mr. and Mrs. Gerdis:
 Please be advised that an inspection of your property on Bishop's Curve in Berlin, Connecticut has revealed continued noncompliance with the town's zoning regulations. This property was suppose to have been brought into compliance by August 1, 1989, per the order of the Court, Aronson, J.
 This letter constitutes notice of the said violations and satisfies the notice requirement ordered by the Court, Aronson, J.
Sincerely,
E. Timothy Sullivan, Jr.
 cc: Roger Gaudio Frederick W. Odell
A hearing on the motion for contempt was set for September 6, 1989. Gerdis finally cleaned the property at that time for the first time from the date he and Barbara Gerdis signed the mortgage deed and compliance agreement.
By letter dated August 28, 1989, the Town of Berlin, pursuant to the compliance agreement, made demand on Gerdis for $7,000.00 it had expended in cleaning up the property. This amount represented the cost charged by Manafort. This $7,000.00 debt has never been paid. The Town has paid Manafort the $7,000.00. Thereafter the plaintiffs, as previously indicated, amended the complaint in this action by adding a second count seeking to foreclose on the mortgage deed which secured performance of the compliance agreement.
The defendants, after filing a general denial of the alleged breach of the compliance agreement, filed two special defenses. The first special defense alleged that the compliance agreement was not a legally binding agreement. The second special defense alleged that the compliance agreement was unconscionable and void as a matter of public policy. The defendants have also filed a counterclaim alleging, in four counts, CT Page 548 unlawful entry, conversion, negligent entering of the property, and abuse of process.
The plaintiffs, after responding to defendants' counterclaim filed a special defense alleging that plaintiffs had permission to enter defendants' property to cure the zoning regulations by virtue of the compliance agreement. The defendants deny plaintiffs' special defense.
The defendants breached the compliance agreement. They neglected and/or refused to pay the $7,000.00 incurred by the Town of Berlin in cleaning up the Bishop's curve property. The plaintiff is entitled to a decree of foreclosure of the mortgage. The debt is in the amount of $7,000.00.
The compliance agreement is valid and subsisting. The plaintiffs have fully performed their obligations under the agreement, and the defendants have breached the agreement.
A mortgage foreclosure action is an equitable proceeding. Reynolds v. Ramos, 188 Conn. 316, 320. "In a foreclosure proceeding the trial court must exercise its discretion and equitable powers with fairness, not only to the foreclosing party but also to . . . the owner." Fidelity Trust Co. v. Irick, 206 Conn. 484, 490 (1988).
"Commonly a mortgage is given to secure the mortgagee in his (its) expectation of being repaid a sum of money which is due to him (it) from the mortgagor. . . . A mortgage is, however, equally useful in providing a security assurance underlying projected future transactions." Powell on Real Property, Volume 3, Section 442, Pgs. 570, 571. "The condition of a mortgage may be the payment of a debt the indemnity of a surety, or the doing or the doing or the not doing any other act." Connecticut National Bank v. Esposito, 210 Conn. 221,225; Cook v. Bartholomew, 60 Conn. 24, 25, 22 A. 444 (1891). "A mortgage may be foreclosed for non-performance of any act, the performance of which is stipulated for or secured by the mortgage. Thus, where so provided by the mortgage . . . foreclosure may be had for breach of a covenant or condition to perform a contract . . . or other obligation . . . ." 59 C.J.S. Mortgages, Section 498, Pgs. 801, 802. "The right to foreclose accrues on a breach of the condition the performance of which the mortgage was given to secure, whether such condition is for the payment of money . . . or for the performance of some other act . . . and as determined by the contract of the parties." 59 C.J.S. Mortgages, Section 494, Pg. 776.
A contract is created upon the manifestation of mutual assent between parties obligating an exchange of consideration. CT Page 549 Ubysz v. DiPietro, 185 Conn. 47, 51 (1981). The promise to forebear from prosecuting a cause of action constitutes valid consideration if the claim on which the suit was threatened was valid and enforceable. Iseli Co. v. Connecticut Light and Power Co., 211 Conn. 133, 136 (1989).
In this case, the defendant, among other claims, charges the plaintiff failed to perform as promised because no "withdrawal of action" was filed in case #0426436. In case #0426436 a jacket notation reads as follows:
 3-14-88 Judgment of dismissal for failure to file withdrawal by 3-11-88 . . . .
The plaintiffs obviously elected to allow the case to expire by court action rather than to file a "Withdrawal". The result, however, is the same and the defendants do not consequently receive a lessened benefit. Withdrawal is defined as "the act or process of withdrawing, as (a) retreat or retirement", The American Heritage Dictionary, New College Edition. The words of (a) contract must be given their common usage and meaning where possible. Phillipe v. Thomas, 3 Conn. App. 471,474 (1985). Whether a party has satisfied it contractual obligations is a factual determination. See Phillipe v. Thomas,3 Conn. App. 471, 475 (1985). Our Connecticut court has held that mere failure to exactly perform does not warrant rescission. Collins v. Sears, Roebuck Co., 164 Conn. 369, 392 (1973). Indeed, deviation between the consideration required under a contract and the consideration rendered is permitted when the other party has benefited by such consideration; Greco v. Morcaldi, 145 Conn. 685, 689-90 (1959); and the deviation does not defeat the purpose of such consideration. Loveland v. Aymett's Auto Arcade, 121 Conn. 231, 235-36 (1936). Consistent therewith is the principle that the intended beneficiary of a contract provision may waive rights under it. Lana v. Greene,175 Conn. 453, 458 (1978). In any event, the principle of substantial performance dictates that no technical variance should deny enforcement of a contract in the face of substantial performance and no detriment. See Corbin on Contracts, Volume 3A, Section 700 et. seq.
When a party promises to do something which "is neither impossible or unlawful at time of promise, performance is required. Nann v. Pignatelli, 3 Conn. App. 74, 79 (1984) cert. denied 196 Conn. 805 (1985). A failure to perform constitutes a breach of contract.
In the present action a valid agreement exists. Each party to the compliance agreement manifested her or his or its assent by executing the agreement. Ubysz, 185 Conn. at 51. The CT Page 550 plaintiffs agreed to withdraw the zoning enforcement action, CV 87-0426436, without costs and to permit the defendants to have 7 months to clean up the property. Defendants agreed to clean up the property by September 1, 1988, and, in the event clean up was not effectuated, to permit the plaintiffs to clean up the property and stand charged for the cost thereof. The mutual promises of the parties are obvious.
The plaintiffs have fully performed his and its obligations.
The plaintiffs have not prosecuted the zoning enforcement action, CV 87-0426436, nor has it imposed the costs of said lawsuit (case #0426436) on the defendants. Although the compliance agreement called for "withdrawal of the action", allowing the case to be dismissed is a permitted deviation. The defendants have obtained the identical benefit by reasons of the plaintiffs' permitting the case to expire and the purpose of the consideration is not defeated. Greco, 145 Conn. at 689-90; Loveland, 121 Conn. at 235-36. The plaintiffs permitted the defendants until September 1, 1988, to comply with the zoning regulations. By virtue of many extensions, the defendant, Mr. Gerdis, was given until June 12, 1989, to comply. While the issue of whether plaintiffs satisfied their obligations is a question of fact; Phillipe, 3 Conn. App. at 475; it is obvious that they have.
A review of the evidence demonstrates that the defendants did not satisfy their obligations. The Gerdis property on Bishop's Curve was never in compliance with the Berlin zoning regulations between February 2, 1988 and September 1, 1988. Actually, the property was not in compliance between February 2, 1988 and August, 1989.
The objective evidence does not support Thomas Gerdis' claim that the property was clean on September 1, 1988. Photos in evidence when compared, depict the property in January, 1988, and the photos taken in June, 1989 and show a strikingly similar condition at both times. Roger Gaudio testified that he continually monitored the property from February, 1988, through June, 1989, and the property never complied with the zoning regulations. The condition of the property worsened as Mr. Gerdis continued to accumulate material on the property. After being notified of the Town's intention to clean the property, Mr. Gerdis contacted Berlin Mayor Robert J. Peters and admitted the property was a mess and that it was a big job to clean it up.
Testimony reveals that the property was characterized as being a "junk yard". It remained in that sense, essentially a junk yard from February, 1988, through August, 1989. The property CT Page 551 is zoned R-43 residential. A review of the zoning regulations particularly the use and bulk table, section 4.11, which defines what is a permitted use of the property reveals that outside storage and junk yards are not permitted.
A valid agreement exists, the plaintiffs fully performed obligations under that agreement and the defendants breached their obligations. A decree of foreclosure of the mortgage securing performance of the compliance agreement is properly an appropriate remedy in this this case.
The defendants have claimed that certain special defenses apply here and have been proved. First they claim that the compliance agreement is not legally binding nor supported by the evidence.
The Zoning Commission of the Town of Berlin, according to the testimony of Town Planner William Voelker, designated the Town Planner and Zoning Inspector to enforce the zoning regulations. Mr. Voelker also testified that the zoning inspector was previously referred to as the zoning enforcement officer. The job descriptions of these two positions substantiates this testimony. The Town of Berlin Charter clearly permits the Town's Corporation Counsel to enter into agreements subject to approval of the Executive Board.
With respect to the zoning enforcement action, #0426436, the zoning inspector, in fulfilling his duty to enforce the zoning regulations, initiated the lawsuit. The parties agreed to settle the lawsuit as evidenced by the compliance agreement. This agreement was negotiated by the corporation counsel and, Roger Gaudio, as zoning inspector and in furtherance of his duty to pursue compliance of the zoning regulations, executed the agreement. Roger Gaudio, as zoning inspector, entered into a legally binding agreement.
In any event, the agreement, upon subsequent ratification by the Executive Board, became legally binding without question.
A municipality can ratify an otherwise illegal contract. John J. Brennan Construction Corporation, Inc. v. Shelton, 187 Conn. 695, 712 (1982). Such ratification effectively binds the municipality was though authority had been given initially." Norwalk v. Board Labor Relations, 206 Conn. 449,453 (1988).
The Executive Board approved the compliance agreement on March 7, 1988. Furthermore, the subsequent acts of the Executive Board, Finance Board, and Town meeting in authorizing an CT Page 552 appropriation to clean up the property demonstrates that the Town of Berlin had, at the very least, ratified the agreement.
Defendants' special defense that the compliance agreement is unconscionable and void as a matter of public policy is not supported by the evidence.
A party that claims an agreement is unconscionable and void must clearly demonstrate that there is an impropriety which is so injurious to society's interests that it is contrary to public policy. Collins, 164 Conn. at 377; Rupert's Oil Service v. Leslie, 40 Conn. Sup. 295, 298 (Sup.Ct., 1985). The law, however, "favors construction which will make [a] contract valid rather than invalid. . . ." Mozzochi v. Luchs, 35 Conn. Sup. 19,23 (Sup.Ct., 1977). "Whether provident or improvident, an agreement moved on calculated considerations is entitled to the sanction of the law. . . ." Collins, 64 Conn. at 375.
In the present case the defendants argue that the compliance agreement is unconscionable and void in that the Town of Berlin was "the sole arbiter". This is a mischaracterization of the agreement.
The plaintiffs had originally filed a zoning enforcement action, CV 87-0426436, and were prepared to have a judge determine whether the Gerdis property on Bishop's Curve violated the zoning regulations. Plaintiffs, however, chose to acknowledge the violation in return for certain consideration. They also agreed to allow the Town of Berlin to cure zoning violations if they failed to do so by September 1, 1988.
Thereafter the Town of Berlin notified Gerdis that he had failed to satisfy the compliance agreement and that the Town intended to clean up the property. The defendants, if they believed that they had satisfied their obligations under the compliance agreement, could have brought an action to enjoin the plaintiffs. In that situation a judge would have decided whether the agreement was breached. In effect, the agreement merely transferred the burden of commencing an action.
Plaintiffs correctly maintain this was a fair agreement in light of the fact that they had already filed a zoning enforcement action and effectively withdrew it as consideration for the agreement. Furthermore, since the law favors construing a contract as valid; Mozzochi, 35 Conn. Sup. at 23; and the defendant have not established an impropriety so injurious to society that it violates public policy; Collins,164 Conn. at 377; Rupert's Oil Service, 40 Conn. Sup. at 298; the compliance agreement is not and cannot be found unconscionable and CT Page 553 void as a matter of public policy.
The plaintiffs did not unlawfully enter defendants' property. Trespass is a possessory action and the claimant, therefore, must prove possession in order to prevail. Wadsworth Realty Co. v. Sundberg, 165 Conn. 457, 461 (1973). A party may justify entering onto someone's property by establishing consent of the owner, and in such case trespass does not exist. Hanson v. Carroll, 133 Conn. 505, 508 (1947). An owner may further define the scope of permissible conduct while on said property. State v. Martin, 35 Conn. Sup. 555, 560 (App. Sess., 1978).
In the present action the defendants granted the plaintiffs permission to enter the Bishop's Curve property, for the purpose of cleaning it up and bringing it into compliance with the zoning regulations, in the event the defendants failed to clean it themselves. By failing to clean the property and comply with the zoning regulations, the compliance agreement has effectively granted permission to enter the property. The scope of the permission granted was being for the purpose of curing all zoning regulations. Hanson, 133 Conn. at 508; State v. Martin, 35 Conn. Sup. at 560.
Plaintiffs did not convert defendants' property to its own use thereby damaging the defendants. Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another. Epstein v. Automatic Enterprises, 6 Conn. App. 484, 488 (1986). The measure of damages in a conversion action is the market value of the goods at the date of conversion. Waterbury Petroleum Products, Inc. v. Canaan Oil and Fuel Co., Inc., 193 Conn. 208,222 (1984).
In the present action defendants claim of conversion must fail because the compliance agreement authorized the plaintiffs to clean up the property so that it complied with the zoning regulations. The plaintiffs' exercise of control over the material was authorized and the conversion action must fail. Epstein, 6 Conn. App. at 488.
Furthermore, even if the exercise of control was not authorized, the defendants were not damaged because any material removed from defendants' property had no value.
"Damages are an essential element of . . . proof before" recovery will be permitted. Falco v. James Peter Associates, Inc., 165 Conn. 442, 445 (1973) citing Braithwaite v. Lee, 125 Conn. 10, 44 (1938). Damages should be established by reasonable certainty and not speculatively. Johnson v. CT Page 554 Flammia, 169 Conn. 491, 500 (1975). Sufficient evidence must be produced for the trier to make a fair and reasonable estimate. Falco, 165 Conn. at 445.
In the present case the defendants have not produced sufficient evidence to allow the judge to make a fair estimate with reasonable certainty. In fact, Gerdis has written two estimates of damage. The first estimate, complied the day of clean up on June 19, 1989, lists damages at approximately $5,000.00. Mr. Gerdis testified that in preparation for trial he compiled another list which calculated damages in excess of $20,000.00. When questioned about some of the specifics on the $20,000.00 list, Mr. Gerdis couldn't decide whether the wooden trusses were damaged or removed, yet he placed a value on the damage incurred. Photographs taken after the clean up clearly show items such as an air compressor, golf cart and lawn mower were not removed but Mr. Gerdis claimed they were.
Finally, the testimony of Mr. Gerdis regarding damages is in direct conflict with the testimony of both Roger Gaudio and James Manafort. Mr. Manafort, an expert in determining value of construction type material based on his more than 30 years experience, testified that nothing of value was removed or damaged. Rather, Manafort testified that care was taken to specifically segregate anything which appeared to have value.
Defendants' claim of conversion must fail for lack of credible proof of damages.
Plaintiffs did not negligently enter defendants' property. Plaintiffs maintain that defendants' claim of negligence must fail on the grounds that no damages have been proven, an essential element of a tort cause of damage. Plaintiffs never negligently entered the property. On June 19, 1989, plaintiffs inserted the keys into the ignition of a backhoe, started the engine and moved the vehicle a short distance out of the way. On June 20, 1989, when Gerdis denied access, the plaintiffs sought an injunction rather than forcefully entering the property.
Plaintiffs exercised care and caution in entering the property and, defendants suffered no damages. The negligence claim must, therefore, fail.
The defendants claim that the reference in the mortgage to a compliance agreement of January 29, 1988, is fatal to the plaintiffs cause of action because no such compliance agreement exists as of that date. This is obviously a mistake. The plaintiffs filed the operative February 2, 1988 Compliance CT Page 555 Agreement numerous times. There is no January 29, 1988 Compliance Agreement. This is an equitable proceeding. Equity abhors a forfeit. The defendant should take no benefit from the mistake.
The Town of Berlin gave the plaintiffs many chances to comply with the zoning regulations. Time and time again extensions were granted while Mr. Gerdis made promises which were never fulfilled. Finally the Town resorted to an available alternative to cure the zoning violations.
Even when the Town finally moved in to clear the property it did not do so indiscriminately. It preserved anything which appeared to have value.
The plaintiffs have persuaded the court as to all essential elements in their complaint. The defendants have not persuaded the court, either as to their special defenses or their counterclaims.
Judgment may enter for the plaintiffs. A decree of foreclosure may enter. The debt is found in the amount of $7,000.00 and costs and attorney's fees.
LEONARD W. DORSEY, SENIOR JUDGE