STATE OF CONNECTICUT *v.* GEORGE MENTION
(5153)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 2—decision released September 8, 1987

*Mark Rademacher,* for the appellant (defendant).

*Geoffrey Marion,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark* and *Juliett Crawford,* assistant state's attorneys, for the appellee (state).

HULL, J. After a trial to the court, the defendant was found guilty of creating a public disturbance in violation of General Statutes § 53a-181a[1] and simple tres-

---

[1] General Statutes § 53a-181a provides: "(a) A person is guilty of creating a public disturbance when, with intent to cause inconvenience, annoy-

pass in violation of General Statutes § 53a-110a.[2] The defendant appeals from the judgment, raising five claims of error: (1) that the trial court erred in failing to grant the defendant a trial by jury on both the simple trespass charge and the charge of creating a public disturbance; (2) that the trial court erred in finding the defendant guilty of simple trespass because the statute is unconstitutionally vague and overbroad; (3) that the defendant's conduct and speech were constitutionally protected; (4) and (5) that there was insufficient evidence to find the defendant guilty of either simple trespass or creating a public disturbance.

The underlying facts are not in dispute. The defendant was standing with his friends in a busy passageway of the food court in the Chapel Square Mall in New Haven. The defendant was asked by a private security guard, employed by the mall, to move along. In response, the defendant verbally attacked the security guard using vile language. He assumed a posture appropriate for a search and arrest and challenged the security guard to arrest him. The director of security testified that the confrontation between the defendant and the security guard was loud enough to attract his attention from some distance. The director of security also asked the defendant to move along. The defendant responded by verbally attacking the director of security and challenging the director to arrest him. The security guard and the director of security testified that a crowd gathered as a result of the defendant's con-

ance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or in violent, tumultuous or threatening behavior; or (2) annoys or interferes with another person by offensive conduct; or (3) makes unreasonable noise.

"(b) Creating a public disturbance shall be an infraction."

[2] General Statutes § 53a-110a provides: "(a) A person is guilty of simple trespass when knowing that he is not licensed or privileged to do so, he enters any premises without intent to harm any property.

"(b) Simple trespass shall be an infraction."

duct. The state presented evidence that the defendant had not purchased anything while in the mall. There was no evidence presented, however, that the defendant entered the mall with the intent to trespass or knowledge that he was trespassing.

The defendant's claims logically fall into two distinct categories: those which address the charge of simple trespass and those which address the charge of creating a public disturbance.

## I

The defendant raises three claims of error relating to his conviction for simple trespass: (1) that the Connecticut constitution requires a trial by jury for the crime of simple trespass; (2) that the simple trespass statute, General Statutes § 53a-110a, is repugnant to the state and federal constitutions because it is vague and overbroad; and (3) that there was insufficient evidence for the trial court to find the defendant guilty of simple trespass.[3] In light of our determination on the issue of the sufficiency of evidence, we consider this claim first.

General Statutes § 53a-110a provides in part: "A person is guilty of simple trespass when *knowing* that he is not licensed or privileged to do so, he enters any premises without intent to harm any property." (Emphasis added.) The language of General Statutes § 53a-110a does not create a strict liability crime. The statute requires knowledge on the part of the accused that he is entering without license or privilege.

The defendant in this case was a business invitee. *Corcoran* v. *Jacovino,* 161 Conn. 462, 465, 290 A.2d 225 (1971). A business invitee is not required to make a purchase. The mere possibility that he will make a

---

[3] The state concedes that there is insufficient evidence upon which to uphold the defendant's conviction of simple trespass.

purchase in the future is sufficient to confer the status of business invitee. *Corcoran* v. *Jacovino,* supra; Restatement (Second), Torts § 332, comment (3) (f). In the absence of evidence that the defendant knowingly entered as a trespasser there can be no trespass unless the possessor revoked the status of business invitee.

General Statutes § 53a-110a does not provide for revocation of the status of business invitee. The simple trespass statute differs from criminal trespass in the first degree in precisely this respect. General Statutes § 53a-107 (a) (1), the criminal trespass statute, provides that a trespass occurs "after an order to leave or not to enter [is] personally communicated to such person by the owner of the premises or other authorized person." See *State* v. *Martin,* 35 Conn. Sup. 555, 398 A.2d 1197 (1978). Since the defendant was charged with simple trespass, and not with criminal trespass, the state bore the burden of proving that the defendant entered as a knowing trespasser. There must be at least indirect evidence presented on an element of a crime for the finder of fact to determine guilt. *State* v. *Tucker,* 181 Conn. 406, 419, 435 A.2d 986 (1980). The record discloses that no evidence was presented at trial that the defendant entered the Chapel Square Mall as a knowing trespasser.

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt 'does not require a court to "ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt." ' (Emphasis in original.) (Citation omitted.) *Jackson* v. *Virginia,* [443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)]. 'Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson* v. *Louisiana,* 406 U.S. [356, 362,

92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon [the trier's] discretion only to the extent necessary to guarantee the fundamental protection of due process of law." (Emphasis in original.) *Jackson* v. *Virginia,* supra, 319." *State* v. *Scielzo,* 190 Conn. 191, 197–98, 460 A.2d 951 (1983). The state's failure to present any evidence on the knowing element of the simple trespass statute requires us to find the trial court's judgment on this count clearly erroneous. Absent sufficient evidence for a finding of guilt on the charge of simple trespass, we are precluded from reaching the defendant's constitutional claims. Whether General Statutes § 53a-110a is unconstitutionally vague and whether it requires a jury trial cannot be tested in the abstract. *Moscone* v. *Manson,* 185 Conn. 124, 134, 440 A.2d 848 (1981). " '[C]onstitutional issues are not considered unless absolutely necessary to the decision of a case.' " *State* v. *Onofrio,* 179 Conn. 23, 37–38, 425 A.2d 560 (1979), quoting *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 (1974).

## II

The defendant raises three claims of error relating to his conviction for creating a public disturbance: (1) that the state constitution requires a trial by jury for creating a public disturbance; (2) that words and conduct for which the defendant was convicted are protected speech under the state and federal constitutions;

and (3) that there was insufficient evidence to find the defendant guilty of creating a public disturbance.

The defendant's first claim of error is that the trial court erred in denying him a jury trial on the charge of creating a public disturbance in violation of General Statutes § 53a-181a. The defendant contends that because he was charged by an information he is entitled to a jury trial. We disagree. This precise issue was addressed in *State* v. *Weisser,* 9 Conn. App. 255, 518 A.2d 655, cert. denied, 202 Conn. 803, 519 A.2d 1207 (1986). In *Weisser,* we noted that the origins of General Statutes § 53a-181a are in the disorderly conduct statute, General Statutes § 53a-182. We concluded that the precedent concerning a jury trial for disorderly conduct therefore controlled our analysis of whether a defendant is entitled to a trial by jury for violating General Statutes § 53a-181a. We held in *Weisser,* as we do today, that a violation of General Statutes § 53a-181a does not give rise to a right to be tried by a jury.

The defendant's second claim of error is that his speech and conduct at the time of his arrest were protected under the Connecticut and United States constitutions. We disagree.

General Statutes § 53a-181a (a) (2) provides: "A person is guilty of creating a public disturbance when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . he (2) annoys or interferes with another person by offensive conduct." The trial court heard evidence that the defendant and his friends were asked by a security guard to move along because they were in the main passageway of the food court in the Chapel Square Mall. All members of the group acquiesced except the defendant.

According to the record, the defendant refused to move and responded "Go ahead, arrest me." The defendant then spread his arms and legs and leaned against

a counter. The defendant began verbally attacking the security guard in a loud voice, saying "Go ahead. Arrest me. You fucking crazy. You can't fucking arrest me. Go ahead. Try it." The defendant's outburst was sufficiently loud to attract the attention of the mall's security director. The security director also asked the defendant to move along. In response, the defendant told the security director "Lock my fucking ass up, if you want," and "I don't give a fuck lock me up." Evidence was presented that the area of the mall where the confrontation took place was heavily trafficked and that a crowd formed during the confrontation. The defendant claims that he did not challenge the guards or threaten them. He asserts that his speech and conduct are protected by the constitution and are not within the "fighting words" exception created by *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942).

Addressing this issue in *State* v. *Beckenbach,* 1 Conn. App. 669, 678, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985), we stated: "Fighting words, in constitutional parlance, are those which are inherently inflammatory; *Street* v. *New York,* 394 U.S. 576, 592, 89 S. Ct. 1354, 22 L. Ed. 2d 572 (1969); and are directed at a particular individual or group. *Cohen* v. *California,* 403 U.S. 15, 20, 91 S. Ct. 1780, 29 L. Ed. 2d 284, reh. denied, 404 U.S. 876, 92 S. Ct. 26, 30 L. Ed. 2d 124 (1971) . . . . They are 'those which touch the raw nerves of one's sense of dignity, decency, and personality and which, therefore, tend to trigger an immediate violent reaction.' *State* v. *Hoskins,* [35 Conn. Sup. 587, 590, 401 A.2d 619 (1978).]"

In *Beckenbach,* the defendant made repeated vile verbal attacks on two Danbury police officers and a Western Connecticut State College security guard. The defendant continued his verbal attack on the police offi-

cers until he was arrested. In concluding that Beckenbach used "fighting words," we distinguished the case from *State* v. *Nelson,* 38 Conn. Sup. 349, 448 A.2d 214 (1982). In *Nelson,* the defendant verbally attacked a police officer out of the hearing of any other person. The court found the defendant's speech was not actionable. The facts of *Nelson* stand in sharp contrast with the facts in this case. Here, the defendant's conduct occurred in a main passageway of an enclosed mall with a crowd gathering because of the defendant's speech and conduct.

More recently we found that an abusive verbal attack on police officers on a public street was not constitutionally protected speech. *State* v. *Weber,* 6 Conn. App. 407, 414–15, 505 A.2d 1266 (1986). Neither *Beckenbach,* supra, nor *Weber,* supra, articulates a requirement that "fighting words" be accompanied by an actual threat of physical force against a particular person, nor is such a requirement articulated by *Chaplinsky* v. *New Hampshire,* supra. To the contrary, " '[r]esort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no questions under that instrument.' " *Chaplinsky* v. *New Hampshire,* supra, 572, quoting *Cantrell* v. *Connecticut,* 310 U.S. 296, 309–310, 60 S. Ct. 900, 84 L. Ed. 213 (1940). The United States Supreme Court has recently affirmed the "fighting words" exception to protected speech in *Bose Corporation* v. *Consumers Union of the United States,* 466 U.S. 485, 505, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984).

We find nothing in the record which distinguishes the facts of this case from *Weber,* supra, and *Beckenbach,* supra. In both of those cases the defendant verbally attacked particular individuals with vile language. In none of these cases was the defendant provoked or protesting his arrest. Nor was there any political content

to the defendants' speech in these cases. Rather, the facts are strikingly similar in the way the defendants publicly challenged the police by invective. In this case the defendant repeatedly challenged the security guard and the director of security to arrest him. Not only was his language vile but it was accompanied by challenging conduct. The defendant's speech and conduct fall well within the "fighting words" exception to constitutionally protected speech carved out by *Chaplinsky* v. *New Hampshire,* supra.

We find that the absence of error on the issue of protected speech leaves little merit to the defendant's final claim that there was insufficient evidence for the trial court's judgment that the defendant was guilty of creating a public disturbance. The defendant's claim that there was insufficient evidence to convict him for creating a public disturbance depends primarily on his argument that his speech and conduct were constitutionally protected. The defendant contends that his speech and conduct were not sufficiently provocative to constitute "fighting words." He relies in part on *Terminiello* v. *Chicago,* 337 U.S. 1, 69 S. Ct. 894, 93 L. Ed. 1131 (1948); and *State* v. *Anonymous (1976-9),* 33 Conn. Sup. 93, 363 A.2d 772 (1976).

In *Terminiello* v. *Chicago,* the defendant gave a political speech. The United States Supreme Court found that speech protected because it contributed to the "free debate and free exchange of ideas . . . ." Id., 4. In *State* v. *Anonymous (1976-9),* supra, the defendant was selling "communist" propaganda in a parking lot. In the present case there was no political content to the defendant's speech or his conduct. Rather, the defendant's speech and conduct served no purpose other than to challenge the security guard and the director of security at the Chapel Square Mall.

Absent constitutional protection, the sole issue is whether the evidence presented at trial brings the defendant's speech and conduct within the purview of General Statutes § 53a-181a (a) (2). A similar issue was presented in *State* v. *Duhan,* 194 Conn. 347, 481 A.2d 48 (1984). In *Duhan,* the defendant claimed there was insufficient evidence to convict her of disorderly conduct in violation of General Statutes § 53a-182 (a) (3). The court considered the "time and place at which the noise was made" a critical factor in whether the trier of fact could properly find the defendant guilty of the crime charged. The court determined that the defendant's "yelling and cursing" in a "busy police station"; id., 360; was sufficient evidence to constitute a basis for the trier's guilty verdict.

The evidence presented in this case far exceeds the standard articulated by *State* v. *Duhan,* supra. The evidence demonstrated that every effort was made by the security officer and the director of security to avoid a confrontation with the defendant by asking him to move along. The defendant refused to move and challenged the security personnel both verbally and by his conduct. This confrontation occurred in a busy public location.

The record supports the trial court's conclusion that the defendant was "either intentional or reckless," *State* v. *Duhan,* supra, 356, in his conduct as required by General Statutes § 53a-181a. There was no error in the trial court's judgment that the defendant created a public disturbance as charged.

There is error in part, the judgment of conviction of simple trespass is set aside and the case is remanded with direction to render judgment for the defendant on the simple trespass count.

In this opinion the other judges concurred.