STATE OF CONNECTICUT *v.* SCOTT BRIAN WOLFF
(12669)

LAVERY, HEIMAN and SCHALLER, Js.

Argued January 11—decision released April 11, 1995

*Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*David J. Sheldon,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *William Bumpus,* former assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, after a jury trial, of two counts of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1),[1] and one count of breach of the peace in violation of General Statutes § 53a-181 (a) (5).[2] The defendant claims that the trial court improperly (1) permitted the defendant to represent himself without a determination that he was competent, (2) permitted him to proceed without an adequate waiver of counsel, (3) determined that sufficient evidence was introduced at trial from which a rational trier of fact could find the defendant guilty of breach of the peace, and (4) instructed the jury on the intent element of

---

[1] General Statutes § 53a-167c (a) provides in pertinent part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in performance of his duties, (1) he causes physical injury to such peace officer . . . ."

[2] General Statutes § 53a-181 (a) provides in pertinent part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (5) in a public place, uses abusive or obscene language or makes an obscene gesture . . . ."

breach of the peace. We agree with the defendant as to the second claim. We also conclude, however, that the evidence was sufficient to support the breach of the peace charge.

The jury reasonably could have found the following facts. On May 26, 1992, at approximately 5 p.m., a Hartford police officer, who was patrolling in the downtown area of Hartford near the train station, stopped an individual who fit the description of a robbery suspect. Another officer arrived at the scene to assist shortly thereafter. While the two police officers were investigating the suspect, the officers' attention was drawn to the defendant who was standing at the top of the stairs of the train station yelling obscenities at them. When the officers approached the defendant and attempted to calm him down, he began swinging his arms and fists at the officers, and hit one of them in the chest. In the ensuing struggle, the defendant and the two officers fell down the three steps of the top landing at the station. The struggle continued, but the officers were finally able to subdue and arrest the defendant. Both officers were treated at a hospital for their injuries.

At the time of his arrest, the defendant had outstanding criminal charges involving two separate incidents, one on December 20, 1991, and the other on May 26, 1992. In addition, the defendant had an appeal pending in this court.[3]

During the pretrial proceedings, the defendant continually rejected the appointment of a public defender and insisted that he wanted to proceed pro se. At a pretrial hearing on July 7, 1992, the court, over the defendant's objection, appointed a public defender to assist him. The court assured the defendant that he could

---

[3] See State v. Wolff, 29 Conn. App. 524, 616 A.2d 1143 (1992).

reject the public defender's services, but that he would be appointed notwithstanding.

At a subsequent pretrial hearing, the defendant demonstrated his reluctance to utilize the services of the public defender who had been appointed for him by the court. When the court asked the defendant why he did not want the public defender's assistance, the defendant said, "Because I can present the case better that he can." When the court asked the defendant if he knew anything about the rules of evidence, the defendant said, "Yeah." When the court asked the defendant where he received his training, the defendant replied, "The street." The court informed the defendant that the public defender would remain as standby counsel and that he would assist him if he had any questions. The defendant pleaded not guilty and elected a jury trial.

The defendant proceeded pro se at every step of the trial process. In a pretrial proceeding in which the court suggested to the defendant that if an attorney was handling this case the attorney would make a motion to sever and ask that the two cases not be tried together because one could prejudice the other, the defendant replied, "It makes no difference to me, whatever the state decides as far as that goes." During jury selection, the defendant demonstrated a lack of understanding of proper voir dire questioning and the need for selecting unbiased jurors. Furthermore, during the trial, the defendant interjected prejudicial testimony regarding two uncharged incidents, called and questioned adverse witnesses, and presented a conspiracy defense theory without any evidence to support it. After the defendant was found guilty by a jury in December, 1992, the court ordered the defendant to be committed for psychiatric evaluation and treatment pursuant to General Statutes § 17a-566.

The dispositive issue is whether the trial court properly determined that the defendant waived his right to counsel.[4] A criminal defendant is guaranteed the

[4] The portion of the transcript relevant to the defendant's claim is as follows:

"The Court: All right. For the record then I want to just question you to make sure that it's clear about the fact that you're representing yourself. You have a public defender assigned to you, I'm going to ask Mr. Delaney to remain as standby counsel.

"The Defendant: Okay, Mr. Delaney can represent me.

"The Court: Okay, he's—you mean to represent you or to be stand[by] counsel?

"The Defendant: No, I mean he can standby, what ever you want to call it.

"The Court: Standby counsel?

"The Defendant: Standby counsel, yeah.

"The Court: All right, he will be here to assist you if you want to ask him some questions.

"The Defendant: Yeah, right.

"The Court: My purpose here is to explain to you the consequences of your representing yourself. And the consequences are these, that you're going to be facing an experienced lawyer who knows the rules of evidence and procedure. Who knows how to question witnesses and cross-examine, who has had many years of experience, legal training and you have none. Now if you want to represent yourself knowing the consequences you are facing twenty years in prison, if you get convicted, that's your right. As long as we understand the consequences of your actions, that's the only reason we are here. You have, every citizen has a right to defend and represent themselves, and you have that right like anybody else.

"The Defendant: Ma'am, okay, we can start the trial.

"The Court: Okay, all right and so you've had two years of college, two and a half years of college. Do you feel qualified to represent yourself?

"The Defendant: Ma'am, I wouldn't be standing here if I felt otherwise.

"The Court: Now I have to ask you these questions for the record, you want to represent yourself, that's fine but I am going to make sure this record reflects that you know what you're doing and that's the purpose for these questions. Now do you feel that you can represent yourself, yes or no?

"The Defendant: Yes.

"The Court: And you understand the consequences of your representing yourself?

"The Defendant: Yes.

"The Court: All right, we've already been through that, the fact that you can go to jail for twenty years, correct?

"The Defendant: Yes.

"The Court: All right. All right, knowing that you know the consequences, you know what you're doing, the court is going to let you represent yourself."

right to assistance of counsel by the sixth and fourteenth amendments to the constitution of the United States; *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); and by our state constitution. *State* v. *Gethers,* 193 Conn. 526, 533, 480 A.2d 435 (1984) (*Gethers I*); *State* v. *Varricchio,* 10 Conn. App. 265, 267, 522 A.2d 843 (1987). A criminal defendant also has the right to appear pro se in a state criminal trial if he voluntarily and intelligently decides to do so. *Faretta* v. *California,* 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); see also *State* v. *Gethers,* 197 Conn. 369, 376, 497 A.2d 408 (1985) (*Gethers II*); *Gethers I,* supra, 533. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits." *Faretta* v. *California,* supra, 835.

When faced with a defendant who is deciding to appear pro se, and who wishes to waive his right to counsel, it is vital that the trial court satisfy itself that the defendant is fully aware of the risks involved and makes the choice knowingly. *Gethers II,* supra, 197 Conn. 380–81. Our role as a reviewing court is to determine whether the defendant effectively waived his right to counsel. *State* v. *Varricchio,* supra, 10 Conn. App. 269.

The defendant claims that the trial court failed to comply with the provisions of Practice Book § 961.[5]

---

[5] Practice Book § 961 provides: "A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

Although the defendant did not properly preserve this claim of error for appeal, noncompliance with a mandatory rule of practice constitutes plain error.[6] See *State* v. *Quintana,* 209 Conn. 34, 40, 547 A.2d 534 (1988); *State* v. *Thurman,* 10 Conn. App. 302, 309, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987); see also Practice Book § 4185. The defendant's claim, therefore, is reviewable by this court under the plain error doctrine.[7]

We conclude that the trial court failed to comply adequately with Practice Book § 961 (3), and therefore limit our discussion to the defendant's argument on that section. The defendant asserts that he was not informed of the nature of the charges that he faced. Section 961 (3) requires that the court be satisfied that the defendant "[c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case . . . ." In an attempt to comply with § 961 (3), the court did advise the defendant of the penalties that he faced in light of the state's charges, but it did not advise him of the elements of those crimes so as to inform him adequately of the nature of the charges against him.

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[6] This claim is also reviewable under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Because we conclude that the trial court's actions constituted plain error, we need not undertake a *Golding* analysis.

[7] We note that the defendant raised the issue of plain error review. Both parties, therefore, had the opportunity to brief and argue the claim of plain error. See *Lynch* v. *Granby Holdings, Inc.,* 230 Conn. 95, 99, 644 A.2d 325 (1994).

The state argues that the trial court is entitled to presume that defense counsel has explained the nature of this offense in sufficient detail. *State* v. *Blackwell*, 9 Conn. App. 587, 597, 520 A.2d 634, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987), citing *Gethers I*, supra, 193 Conn. 537. In this case, however, the record clearly indicates that the defendant proceeded without the assistance of counsel from the inception of his court appearances. We cannot presume, therefore, that the defendant's attorney had explained the nature of the offenses to the defendant. *State* v. *Smith*, 18 Conn. App. 368, 375, 588 A.2d 257 (1989).

For the foregoing reasons, we conclude "that the trial court failed to comply substantially with Practice Book § 961 (3). Because § 961 protects a defendant's right to the assistance of counsel, as well as his corollary right to self-representation; *Gethers I*, supra, [193 Conn.] 534; substantial defective compliance with the rule requires reversal 'even if no particular prejudice is shown and even if there is overwhelming evidence of guilt.' *State* v. *Varricchio*, supra, [10 Conn. App.] 270." *State* v. *Smith*, supra, 18 Conn. App. 377.

"Even though our resolution of this case on the issue of [adequate waiver of counsel] would appear dispositive because the other issues are unlikely to arise in a retrial, we must address the sufficiency of the evidence claim since the defendant would be entitled to an acquittal of the charge on which he claims insufficient evidence if he prevails on this claim. *State* v. *Dunn*, 26 Conn. App. 114, 123, 598 A.2d 658 (1991)." *State* v. *Wolff*, 29 Conn. App. 524, 527 n.4, 616 A.2d 1143 (1992). The defendant maintains that the state failed to present sufficient evidence to support his conviction for breach of the peace. Specifically, the defendant argues that the state failed to prove that he possessed the requisite intent to violate General Statutes § 53a-181 (a), and that the jury could not reason-

ably have found that his words constituted "abusive language" under the statute. We disagree.

"When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a two-fold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Carpenter*, 214 Conn. 77, 78–79, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992).

Because the language of the intent element of the breach of the peace statute is identical to the disorderly conduct statute, the Supreme Court's interpretation of the disorderly conduct statute in *State* v. *Indrisano*, 228 Conn. 795, 640 A.2d 986 (1994), applies to the breach of the peace statute as well. In *Indrisano*, the court held that the requisite intent was to "cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety or harm." Id., 810. The jury reasonably could have concluded beyond a reasonable doubt that the defendant possessed the requisite intent under the statute. The defendant viewed two police officers making a lawful arrest of an uncooperative suspect in a violent crime, and screamed vile language at the two officers. The officers attempted to calm the defendant, who immediately initiated an unprovoked physical assault upon both officers. Presented with this evidence, the jury

reasonably could infer that the defendant possessed the intent to cause a breach of the peace pursuant to § 53a-181 (a).

The jury also could reasonably have found that the defendant's words amounted to "abusive language" under General Statutes § 53a-181 (a) (5). The defendant confronted the officers in a public place; *State* v. *Weber*, 6 Conn. App. 407, 415, 505 A.2d 1266, cert. denied, 199 Conn. 810, 518 A.2d 771 (1986); he conducted an unprovoked verbal attack on the officers using vile language; *State* v. *Mention*, 12 Conn. App. 258, 265, 530 A.2d 645, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987); and his language and actions annoyed and alarmed people in the vicinity. *State* v. *Battista*, 10 Conn. App. 499, 502, 523 A.2d 944 (1987). The evidence was sufficient to permit the jury to have found that the defendant's words constituted "abusive language" under the statute.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.