******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL J. MARSALA
(AC 40071)

Alvord, Moll and Eveleigh, Js.

*Syllabus*

Convicted of the crime of criminal trespass in the first degree, the defendant appealed to this court. He claimed that the trial court improperly declined to instruct the jury on the infraction of simple trespass as a lesser offense included within the crime of criminal trespass in the first degree. The defendant's conviction stemmed from his conduct in entering certain property on which a mall was located, and approaching shoppers and asking for money. After he was banned from the mall property by security officers and was warned of a possible arrest, he returned to the property again, which resulted in his arrest by a police officer on private duty. On appeal, the defendant claimed that because there was sufficient evidence in dispute at trial as to whether he properly received an order not to enter the property by the mall owner or an authorized person, which is a required element of criminal trespass in the first degree, the jury could have found that the order was insufficient to find him guilty of criminal trespass in the first degree, but sufficient to satisfy the knowledge element contained in simple trespass. *Held* that the defendant was not entitled to a jury instruction on the infraction of simple trespass, as the evidence presented before the jury excluded the possibility that he could be found not guilty of criminal trespass in the first degree but guilty of the infraction of simple trespass; under the facts of this case, if the jury rejected the evidence presented by the state that the defendant received an order not to enter the mall property from an authorized person, there was no other evidence, introduced by either the state or the defendant, from which the jury could have found that the defendant knew he was not privileged to enter or remain on the mall property and it would have had to find the defendant not guilty of the infraction of simple trespass as well, and, therefore, the defendant's claim that the jury could have found that the evidence presented was sufficient to satisfy the knowledge element of the infraction of simple trespass but not criminal trespass was unavailing.

Argued September 13—officially released November 6, 2018

*Procedural History*

Substitute information charging the defendant with the crime of criminal trespass in the first degree, brought to the Superior Court in the judicial district of Ansonia-Milford, geographical area number twenty-two, and tried to the jury before *Markle, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Laila M.G. Haswell*, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, *Matthew R. Kalthoff*, assistant state's attorney, *Laurie N. Feldman*, special deputy assistant state's attorney, and *Brett R. Aiello*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Michael J. Marsala, appeals from the judgment of conviction, rendered after a jury trial, of one count of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1).[1] On appeal, the defendant claims that the trial court improperly declined to instruct the jury on the infraction of simple trespass, General Statutes § 53a-110a,[2] which the defendant claims is a lesser included offense of criminal trespass in the first degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The Centennial Connecticut Post Mall (mall) is located at 1201 Boston Post Road in Milford (mall property). Currently owned by Centennial Corporation (Centennial), the mall was previously owned by Westfield Corporation (Westfield). Westfield, and later Centennial, has employed Dan Kiley as the mall's general manager. The mall contracts with Professional Security Consultants for security services. Professional Security Consultants employs Thomas Arnone as security director at the mall, and Arnone reports directly to Kiley. Wilfred Castillo, also an employee of Professional Security Consultants, began working at the mall in November, 2014, and had received calls about the defendant on approximately ten to fifteen occasions prior to November 28, 2015. In each call, the defendant was described as a man carrying a red gas can and was present in one of the parking lots at the mall. In response to the calls, Castillo would find the defendant and tell him that panhandling is not allowed on mall property and that he would have to leave.

During the holiday season, from November through January, the mall hires Milford police officers to support the mall security staff and conduct traffic control at the mall's exterior entrances and exits. The mall pays the city of Milford, which pays the police officers' wages, to work what is described as a "private duty job." On November 27, 2015, Officer Joanna Salati of the Milford Police Department was working for the mall on a private duty job when she observed the defendant walking around on mall property with his gas can.[3] She called for a security officer to come out and confirmed with security that the defendant was banned from the mall property. Salati told the defendant that he had been advised several times before that he was banned from the mall property, and she informed the defendant of the property's boundaries. Salati told the defendant that he would be arrested the next time he was found on mall property. Salati saw the defendant leave the mall property and reported the incident to the Milford Police Department, where a report of the incident was generated.

The next day, November 28, Salati was again working

private duty at the mall when her partner, Detective Steve Noss, also of the Milford Police Department, told her that he had observed the defendant on mall property near Sears. Salati, who was working traffic enforcement at the intersection of Boston Post Road and Cedarhurst Road at the time, called for additional officers. She also told mall security to meet her in the Sears parking lot and began walking in that direction, where she observed the defendant approaching customers with his red gas can. The defendant walked away from Salati as she called his name. The defendant eventually stopped walking, Salati arrested him, and he was transported by other officers to the Milford Police Department. The defendant was charged in a long form information with one count of criminal trespass in the first degree in violation of § 53a-107 (a) (1). The defendant elected a jury trial, and evidence was presented on September 14, 2016.

After the close of evidence on September 14, 2016, the court held a charge conference on the record. The court preliminarily discussed the defendant's request to charge the jury on the infraction of simple trespass as a lesser included offense to criminal trespass in the first degree. Defense counsel agreed to submit a revised proposed charge,[4] and the court also indicated that it would afford the state an opportunity to brief its opposition to the defendant's request. The court stated its intention to decide the issue the following day.

The next morning, defense counsel submitted to the trial court a revised written request that the court charge the jury on the infraction of simple trespass as a lesser included offense to criminal trespass in the first degree. In the written request, defense counsel asked that the court give the following charge: "If you have unanimously found the defendant not guilty of the crime of criminal trespass in the first degree, you shall then consider the lesser offense of simple trespass. Do not consider the lesser offense until you have unanimously acquitted the defendant of the greater offense.

"A person is guilty of simple trespass when, knowing that he is not licensed or privileged to do so, he enters any premises without intent to harm any property. For you to find the defendant guilty of simple trespass, the state must prove the following elements beyond a reasonable doubt: first that he entered the premises. Premises is not defined in the law so it has the common meaning. The second element is that he entered knowing he was not licensed or privileged to do so. To be licensed or privileged the defendant must have either consent from the owner of the premises or other authorized person or have some other right to be on the premises. A person acts knowingly with respect to conduct when he is aware that his conduct is of such nature or such circumstances exist."

The state filed a memorandum in opposition to the

defendant's request to charge as to the infraction of simple trespass, arguing that (1) the claim fails under the second prong of the *Whistnant* test[5] and (2) an infraction should not be submitted to a jury as a lesser included offense of a crime.

The court heard oral argument on the defendant's request to charge after counsel gave closing arguments.[6] The court then issued an oral decision denying the request to charge. The court began its discussion by noting the absence of appellate authority directly on point. With respect to the issue of whether the jury should be permitted to decide the facts of a case as it relates to an infraction, the court read *State* v. *Steinmann*, 20 Conn. App. 599, 607, 569 A.2d 557, cert. denied, 214 Conn. 806, 573 A.2d 319 (1990), in conjunction with *State* v. *Mention*, 12 Conn. App. 258, 261, 530 A.2d 645, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987),[7] as "leaning against an infraction being a lesser included offense." The court further found persuasive the state's argument that the infraction of simple trespass fails to satisfy the *Whistnant* test because it contains an added element, specifically that the defendant enter or remain on the premises "without intent to harm any property," which is not required for a conviction of criminal trespass in the first degree. See footnotes 1 and 2 of this opinion. The court then instructed the jury, and the jury retired for deliberations. The next day, the jury reached a verdict, finding the defendant guilty of criminal trespass in the first degree. On October 28, 2016, the defendant was sentenced to one year incarceration, execution suspended after four months, followed by two years conditional discharge. This appeal followed.

On appeal, the defendant claims that the court improperly declined to instruct the jury on the infraction of simple trespass as a lesser included offense of criminal trespass in the first degree. Specifically, he argues that the infraction of simple trespass satisfies all four prongs of the *Whistnant* test. The state responds that the trial court "correctly found that an infraction could not be treated as a lesser included offense of a crime." The state argues in the alternative that, even if certain infractions could be submitted to a jury as lesser included offenses of crimes, the infraction of "simple trespass contains an element that criminal trespass in the first degree does not—the lack of intent to harm property." Thus, the state argues that the trial court correctly found that the infraction of simple trespass fails to satisfy the second prong of *Whistnant*. Although we conclude that the defendant's claim fails the third and fourth prongs of *Whistnant*, we also briefly address the defendant's claim as to the second prong.[8]

We first set forth our standard of review. "It is well settled that [t]here is no fundamental constitutional right to a jury instruction on every lesser included

offense. . . . [*State* v. *Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980)]. Rather, the right to such an instruction is purely a matter of our common law. A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiates the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Langley*, 128 Conn. App. 213, 231, 16 A.3d 799, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011). "The *Whistnant* test is conjunctive, requiring satisfaction of all four prongs." *State* v. *Smith*, 262 Conn. 453, 461, 815 A.2d 1216 (2003).

We begin our analysis by briefly addressing the defendant's claim as to the second prong of *Whistnant*. The defendant argues that the court wrongly construed the phrase "without intent to harm any property" in § 53a-110a (a) as an element of the infraction of simple trespass. The defendant maintains that the phrase is not an element, but rather "[i]ts purpose is to alert the police and prosecution that a defendant who commits a trespass but does not damage property may be charged with simple trespass." The defendant further argues that if *lack* of intent was an element, "the state would be forced to prove beyond a reasonable doubt the defendant's lack of intent to harm the property. The absurd effect of this mandate is that once the state proved the lack of intent, the accused would then be able to successfully defend against the charge by presenting evidence that he or she *did* intend to harm the property." The state responds that "because the lack of intent to harm property is expressly set forth in [§] 53a-110a (a), this court must construe it as an element of simple trespass when contrasting the infraction with criminal trespass in the first degree as alleged in the information." The state relies on the principle of statutory interpretation providing that statutes must be construed so that no clause shall be superfluous, citing, inter alia, *State* v. *Agron*, 323 Conn. 629, 638, 148 A.3d 1052 (2016).

We agree with the defendant and reject the state's argument that the lack of intent to harm property is an element of simple trespass. Reading the statute as the state suggests would lead to the absurd and unworkable result that a defendant could defend against a charge of simple trespass by merely introducing evidence of an intent to harm property.[9] See General Statutes § 1-

2z; *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 554, 46 A.3d 112 (2012) ("we read each statute in a manner that will not thwart its intended purpose or lead to absurd results" [internal quotation marks omitted]). We further reject the state's suggestion that "because the lack of intent to harm property is expressly set forth" in the statute, this court "must construe it as an element" of the infraction. See generally *State* v. *Ray*, 290 Conn. 602, 616, 966 A.2d 148 (2009) (recognizing that phrase "not . . . a drug-dependent person" contained in General Statutes § 21a-278 (b) was not intended to be element of offense); see also *State* v. *Evans*, 329 Conn. 770, 808, 189 A.3d 1184 (2018) (declining to disturb holding in *State* v. *Ray*, supra).

We next turn to the third and fourth prongs of *Whistnant*. "In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . [For purposes of *Whistnant*'s fourth prong,] [e]vidence is sufficiently in dispute where it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal." (Citation omitted; internal quotation marks omitted.) *State* v. *Collins*, 45 Conn. App. 6, 9–10, 692 A.2d 865 (1997). "On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Internal quotation marks omitted.) *State* v. *Langley*, supra, 128 Conn. App. 232.

"Despite being conceptually distinct parts of the *Whistnant* formulation, the third and fourth prongs are subject to the same evidentiary analysis. . . . [A reviewing court] will, therefore, analyze them simultaneously. The third prong of *Whistnant* requires that there [be] some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense. . . . The fourth prong requires that the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) Id., 232; see also *State* v. *Hancich*, 200 Conn. 615, 619–20, 513 A.2d 638 (1986).

The defendant directs this court's attention to the element of criminal trespass in the first degree that the trespass take place "after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person."

General Statutes § 53a-107 (a) (1). The defendant argues that an examination of the evidence and arguments at trial show that this element was sufficiently in dispute. Specifically, he claims that "there was insufficient evidence that the security department, a separate entity from the mall, had the requisite authority to ban the defendant from the property for any length of time beyond 24 hours." He argues that the evidence established reasonable doubt as to "the authority of security and, by extension, Officer Salati, for banning the defendant from the property."

The defendant contends that although the criminal trespass statute requires that the defendant obtain his knowledge from a clear, unequivocal order, personally conveyed by the property's owner or his agent, "knowledge under the simple trespass statute can be gleaned from circumstances and does not have to be explicitly communicated." According to the defendant, the jury could have found that the order was insufficient to convey the knowledge required for a conviction of criminal trespass in the first degree but was sufficient to satisfy the knowledge element contained in the simple trespass statute.[10]

Our resolution of the defendant's claim requires a review of the evidence presented at trial as to the element in dispute. The state presented Castillo's testimony that he previously had told the defendant that panhandling is not allowed on mall property and that he would have to leave. The state also presented Salati's testimony that she told the defendant, on the day before he was arrested, that he was banned from the mall property and that he would be arrested the next time he was found there.

The defendant's defense at trial was that the state had failed to present evidence that the owner of the property had given either Salati or Castillo authority to ban the defendant from the mall property. The defendant introduced into evidence a "Lesson Plan," which was provided by Professional Security Consultants' corporate office to Arnone for purposes of training his staff. That document provides, under the heading of "Temporary Suspension," as follows: "Suspend the privilege of being on the property for an amount of time that is determined by the severity of the incident and local and state ordinance. Any suspension for more than 24 hours must [be] approved [by] the Center Manager."[11] Relying on this evidence, defense counsel argued in closing argument that the written policies only allowed security to ban the defendant for the remainder of the day, and posited that the defendant was possibly aware of that policy. He further argued that the state had failed to present evidence that Westfield, the owner of the mall property, gave authority to ban the defendant.

Arnone testified that, although there was no other written procedure, the "Lesson Plan" did not guide the

day-to-day practices at the mall. Specifically, he stated that the "Lesson Plan" was "not the end all be all of the policy or what we are expected to do as a security staff as far as banning goes." Arnone testified that security can ban someone from the property for either six months or one year and that bans are reviewed by Arnone or his assistant, or Dan Kiley, the general manager of the mall.[12] Arnone testified: "[W]e [issue] anywhere from 360 to 370 [bans] a year." Arnone stated that a ban notice is created for each ban, which notice includes "basic information on the person as well as a photo, if one is able to be obtained, as well as the time period that they are banned, the start date, end date, as well as their offense that they've committed, and whether or not we were able to obtain a signature from the individual." Arnone testified that the forms "are finalized through me or my assistant, and then they go one step further and are further finalized and reviewed by the general manager" of the mall. When Castillo was asked whether he had any personal knowledge as to whether the defendant signed a ban notice in this case, he responded: "No, by the time I got there he was already in the back of the police car so I couldn't have him sign it." Castillo testified that the defendant "was already banned previously." Specifically, he said that the defendant was banned from mall property on July 9, 2015, and that the ban was in place for one year.

Arnone further testified that there were two ban notices on file in the security office for the defendant, dated July 9, 2015, and November 28, 2015. Arnone, however, was not present when either form was created and could not say whether the defendant received either form. No ban notice was introduced into evidence, and no further detail of any incident occurring on July 9, 2015, was presented to the jury. Based on the July 9, 2015 ban notice, both Arnone and Castillo testified that the defendant was not permitted to be on mall property in November, 2015.

The defendant also challenged Salati's authority, introducing into evidence the Milford Police Department "General Orders" regarding "Off Duty Arrest Powers." That policy provides in part, under the heading "Permitted Off-Duty Arrests," as follows: "When off-duty and within the legal jurisdiction of this law enforcement agency, an officer may make an arrest only when . . . (ii) There is an immediate need to prevent a crime or apprehend a suspect; especially those crimes involving the infliction of physical injury to another . . . ." It further provides, under the heading "Prohibited Off-Duty Arrests," as follows: "Officers of this Department may not make an arrest off-duty: . . . (iii) When the arrest is made solely as enforcement of a minor traffic regulation, or the violation is minor in nature and does not require an in-custody arrest for the violation." Lastly, under the heading "Off-Duty Responsibilities," it provides: "Except as allowed by this policy off-duty

officers should not enforce minor violations such as harassment, disorderly conduct, or other nuisance offenses. On-duty personnel shall be contacted to respond to the situation where an off-duty officer becomes aware of such violations." When asked whether she violated that policy in arresting the defendant, Salati testified: "I guess you can say that."

Arnone testified that Milford police officers working on private duty for the mall are permitted to ask individuals to leave mall property. He further testified, however, that he prefers that his security staff initiate any interaction with patrons and customers and that the police officer who is working private duty support the security staff if necessary. When asked whether mall security policy is that security takes the lead on interactions with people on mall property, Salati responded: "I don't know what their policy is."[13]

Our Supreme Court has held that, in order to satisfy the third prong of *Whistnant*, "there must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense," and has "rejected the proposition that a defendant is entitled to instructions on lesser included offenses based on merely theoretical or possible scenarios." (Internal quotation marks omitted.) *State* v. *Arena*, 235 Conn. 67, 78, 663 A.2d 972 (1995). In *Arena*, the defendant sought an instruction on robbery in the second degree as a lesser included offense of robbery in the first degree. Id., 70. The difference between robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and robbery in the second degree in violation of General Statutes § 53a-135 (a) (2), as codified at the time of the offense, was that, in order to convict the defendant of the former, he must have "display[ed] or threaten[ed] the use of what he represent[ed] by his words or conduct to be a . . . firearm," while conviction of the latter required only that the defendant have "display[ed] or threaten[ed] the use of what he represent[ed] by his words or conduct to be a deadly weapon or a dangerous instrument." Id., 68 n.1, 72 n.6. The evidence at trial was that the defendant had entered a convenience store and told the cashier to put "all the money in a bag," as he placed an opaque plastic shopping bag on the counter with his hand at the top of the bag. Id., 69. The defendant appeared to be gripping an object inside the bag, which he pointed at the cashier, who, along with a second cashier, thought the object looked like a gun. Id., 69–70. During trial, the second cashier testified that the object in the bag could have been a club. Id. 78.

Our Supreme Court, explaining that the actual contents of the bag were irrelevant and that the state "only had to prove that the defendant *represented* by his conduct that he had a firearm," found no evidence in the record that the defendant "represented by his words

or conduct that he had something other than a firearm." (Emphasis in original.) Id., 79. Put another way, "a victim's acknowledgment that [the object], in fact, could have been something other than a firearm, namely, a bludgeon or other dangerous instrument, is not evidence that the defendant represented that the object he was carrying was something other than a firearm." Id. Thus, there was insufficient evidence to justify the defendant's request for instructions on robbery in the second degree. Id.; see also *State* v. *Hancich*, supra, 200 Conn. 621 (defendant was not entitled to lesser included offense instruction, where evidence presented at trial provided no factual basis for jury to conclude that defendant was not under influence of intoxicating liquor but operated her vehicle while impaired); *State* v. *Langley*, supra, 128 Conn. App. 233–34 (defendant was not entitled to lesser included offense instruction where, from evidence presented, jury reasonably could have concluded only that defendant intentionally lit victim on fire or that she had nothing to do with victim's injuries, evidence excluded possibility that defendant could be found guilty only of criminally negligent homicide but not murder or manslaughter in the first degree).

In *State* v. *Hancich*, supra, 200 Conn. 621, our Supreme Court found no error in the trial court's refusal to give a lesser included offense instruction, where the evidence introduced at trial was such as to "exclude completely the possibility" that the defendant could be found not guilty of the greater offense, but then be found guilty of the lesser offense. The defendant in *Hancich* was charged with driving while under the influence of intoxicating liquor in violation of General Statutes § 14-227a and requested that the court provide the jury with a lesser included offense instruction on the infraction of driving while impaired in violation of General Statutes § 14-227a (b).[14] Id., 616, 619. Our Supreme Court explained that "an instruction on the lesser included offense of operating while impaired would not have been appropriate unless there were some factual basis—some evidence introduced at trial—which would have supported a jury finding that the defendant was impaired, but not under the influence . . . ." Id., 621. The arresting police officer testified that he followed the defendant for approximately one mile with his lights and siren activated before she pulled her vehicle over. Id., 618. He further testified that she was unable to recite the alphabet beyond the letter "F" and could not stand without assistance. Id., 618. The court concluded that this testimony indicated that, irrespective of her blood alcohol level, the defendant was "quite intoxicated." Id., 621. The defendant did not introduce evidence to rebut the officer's testimony, and therefore "the evidence introduced at this trial was such as to exclude completely the possibility that the defendant was not under the influence of intoxicating liquor, and operated her vehicle while merely impaired." Id., 621–

22. Accordingly, the defendant was not entitled to a lesser included offense instruction under *State* v. *Whistnant*. Id., 622.

We have thoroughly reviewed the evidence and disagree with the defendant's argument that the jury could have found that the evidence presented in this case was sufficient to satisfy the knowledge element of the infraction of simple trespass but not criminal trespass in the first degree.[15] As the defendant argues, "[a] person acts 'knowingly' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." General Statutes § 53a-3 (12). He claims that the state "did not produce any evidence that the defendant was told how long he was banned from the property" and points to his argument at trial that the defendant "may have thought each order to leave lasted only . . . until the end of the day." If the jury was to credit that argument, it then could not have found that the defendant knew he was not privileged to be on mall property on November 28, 2015, because the jury was not presented with any other source of knowledge from which the defendant could become aware that he was not privileged to enter or remain on mall property.

Accordingly, we conclude that the evidence introduced during the trial was such that the jury could not have found that the defendant knew that he was not privileged to enter or remain on mall property; see General Statutes § 53a-110a; if he had not received "an order to leave or not to enter personally communicated to [him by an] authorized person." See General Statutes § 53a-107 (a) (1). Specifically, under the facts of this case, if the jury was to reject the evidence presented by the state that the defendant received an order not to enter from an authorized person, i.e., Castillo or Salati, there was no other evidence, introduced by either the state or the defendant, from which the jury could have found that the defendant knew he was not privileged to enter or remain on mall property.

Indeed, one potential outcome of the trial was that the jury credited the documentary evidence in the form of the Lesson Plan and Off Duty Arrest Powers documents to conclude that the state had not proven that the owner of the property had authorized Castillo and/ or Salati to personally communicate an order to the defendant to leave or not to enter.[16] The jury accordingly could have found the defendant not guilty of criminal trespass in the first degree. However, if the jury credited that documentary evidence and disbelieved the testimony of Arnone and Castillo that they, and by extension Salati, possessed authority to issue a one year ban, there would be no factual basis for the jury to find that the defendant knew that he was not privileged to be on mall property. The jury would have had to find the

defendant not guilty of the infraction of simple trespass as well. Therefore, the defendant was not entitled to a lesser included offense instruction under *Whistnant*.

In sum, we conclude, as a matter of law, that the evidence presented before the jury excludes the possibility that the defendant could be found not guilty of criminal trespass in the first degree, but then be found guilty of the infraction of simple trespass. Accordingly, the defendant was not entitled to a jury instruction on the infraction of simple trespass.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-107 (a) provides in relevant part: "A person is guilty of criminal trespass in the first degree when: (1) Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person . . . ."

[2] General Statutes § 53a-110a provides: "(a) A person is guilty of simple trespass when, knowing that such person is not licensed or privileged to do so, such person enters or remains in or on any premises without intent to harm any property.

"(b) Simple trespass is an infraction."

[3] On a prior occasion, while off duty, Salati also had observed the defendant on mall property. After seeing him approach a woman asking for money in the mall parking lot near Target, Salati told him he should not be on the property.

[4] Although not entirely clear from the record, it appears that an earlier request to charge was reviewed by the court on September 14, 2016, but not filed with the clerk. After the court described it as "a little confusing to the jury," the defendant offered to submit a revised request and did so the next morning.

[5] See *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980) ("[a] defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser" [footnote omitted]).

[6] The court suggested that, rather than leave the jury waiting, it would proceed with closing arguments before taking a recess to hear oral argument on the request to charge and render a decision on that request. The court asked defense counsel whether he was comfortable with that procedure, and he responded that he was.

[7] The defendant in *State* v. *Steinmann*, supra, 20 Conn. App. 606, argued that his prosecution for simple trespass violated his right to equal protection of the law because "the various trespass statutes create two different classes of trespasser, criminal trespassers and simple trespassers, but only the latter group is denied affirmative defenses and the right to a jury trial." Rejecting the contention that separate classes of trespassers are statutorily created, the *Steinmann* court stated: "In enacting §§ 53a-107 through 53a-110a, the legislature has defined four degrees of trespass with distinguishably different essential elements. For example, simple trespass is not a lesser included offense of any of the three degrees of criminal trespass. *State* v. *Mention*, supra. The statutes therefore define separate violations rather than separate classes of trespasser." Id., 607.

The court in *State* v. *Mention*, supra, 12 Conn. App. 261, however, addressed a different element in the previous version of the simple trespass statute, "enter[ing] the property as a knowing trespasser."

[8] We need not reach, and express no opinion on, whether infractions generally may be submitted to juries as lesser included offenses of crimes.

See *State* v. *Marsha P.*, 126 Conn. App. 497, 506 n.6, 11 A.3d 1164 (2011) (noting that "the question of whether in general an infraction may be considered a lesser included offense has not been definitively answered in this jurisdiction").

[9] We also find persuasive the defendant's argument that "forcing the state to prove the lack of intent restricts the state's ability to charge a suspect with simple trespass when there is no evidence of what the defendant's motive was, even if the suspect had not harmed the property. On the other hand, if the phrase is not an element it would allow the prosecutor to apply the charge to very minor trespasses where the accused, without creating mischief or lasting harm, knows he or she is not allowed to be there. It would provide the state the option in appropriate cases to hold the trespasser accountable while avoiding the time and expense of a jury trial."

[10] We note that the defendant does not claim on appeal that there was insufficient evidence to support his conviction.

[11] The document further provides, under the heading of "Reason to suspend:" "1. Only those individuals who have committed a crime at Shopping Center will be considered for banning and as in compliance with local, state and federal ordinances. 2. The Director of Security, Assistant Director of Security or Security Supervisor can only temporarily ban suspects for the remainder of the business day. 3. After a temporary ban by security, on the next business day, the Director of Security must provide documentation supporting the banning to the General Manager of the Shopping Center. 4. The Center's General Manager will make a decision on the length of time the ban will stay in [e]ffect; this will be after completing an investigation of the violation. (Based on the guidelines below) The General Manager will send a certified letter to the banned subject with the status of his/her banning. 5. The General Manager will provide a copy of the banning documentation to the Director of Security, the Director of Security will input the information of the ban into CASE Global. 6. When a Security Officer observes a banned individual on the Shopping Center's property, the officer will notify his/her supervisor; only the supervisor will approach the individual and confirm his/he[r] identity as being the banned individual. The Security supervisor will politely ask the banned subject to leave the center's property. 7. If a banned subject refuses to leave the center's property, the Security Supervisor will retrieve all documentation of the banned subject, Security will contact the local police department, and have him/her arrested for trespassing."

[12] Castillo also testified that he was permitted to issue a one year ban.

[13] Although there was evidence of mall policies posted at the entrance to the mall building, none of the witnesses testified that they had ever seen the defendant inside the mall. He was always observed in one of the parking lots.

[14] The court explained the difference between the applicable statutes as follows: "While 'legal' impairment is conclusively established where a person's blood alcohol percentage falls between .07 and .1 percent, the version of General Statutes § 14–227a (d) (4) in effect when this offense was committed did not create a similar presumption of guilt, based on blood alcohol percentage, with respect to the crime of operating a motor vehicle while under the influence of intoxicating liquor as defined in General Statutes § 14-227a (a). The former § 14-227a (d) (4) provided that a blood alcohol level of 'ten-hundredths of one per cent or more . . . shall be prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section.' That section thus created only a rebuttable presumption that a person was 'under the influence of intoxicating liquor' where his or her blood alcohol level was found to equal or exceed .1 percent. While evidence of such an alcohol level was sufficient to establish the state's prima facie case, the defendant was formerly allowed to introduce evidence to show that, despite a blood alcohol level equal to or greater than .1 percent, he or she had not been *under the influence* of intoxicating liquor at the time of arrest. Thus, although in the present case the defendant's blood alcohol level was measured at .165 percent, the possibility that she was merely impaired, and not under the influence, cannot be excluded as a matter of law under the former General Statutes § 14-227a (d) (4)." (Emphasis in original; footnote omitted.) *State* v. *Hancich*, supra, 200 Conn. 620–21.

[15] As further support for his argument that he challenged the knowledge element of criminal trespass in the first degree, the defendant references his argument that "Salati was not totally credible because she was especially preoccupied with ejecting the defendant from the property." We fail to see how any preoccupation on Salati's part could affect a jury finding as to whether the defendant knew that he was not privileged to enter or remain on mall property.

[16] See *State* v. *LoSacco*, 12 Conn. App. 172, 176, 529 A.2d 1348 (1987). In *LoSacco*, this court concluded that there was insufficient evidence to sustain the defendant's conviction for criminal trespass in the first degree on the basis that the state had failed to prove that the defendant had been "ordered personally by the owner of the premises, or other authorized person, not to enter the building." Id. Although a tenant of the building previously had personally communicated to the defendant an order not to enter the building, there was no evidence that the building superintendent or any other agent of the owner had conferred authority on the tenant to order the defendant not to enter the public lobby of the apartment complex. Id., 177–78. The court stated that although the jury could have concluded that the building superintendent had conferred such authority upon a police officer who responded to a previous incident involving the defendant, that officer did not testify, and the defendant denied that the officer issued an order to him. Thus, there was "no evidence of the words spoken" between the officer and the defendant. Id., 178.

Moreover, although the jury could have found that the police officer who responded to the incident for which the defendant was charged ordered the defendant not to enter the building, "[t]he mere fact that he is a police officer does not, however, under these circumstances, authorize him to [issue such an order]." Id. The officer testified that he had not spoken to the building superintendent, and, therefore, could not have obtained authorization directly from him. "While [the superintendent] could have authorized the police department to issue the order, thus transferring his authority to the officer dispatched, there was no evidence that [he] ever did so." Id. Thus, the state had failed to prove that the person issuing the order was authorized. Id., 179.

In *State* v. *Marsala*, 116 Conn. App. 580, 586, 976 A.2d 46, cert. denied, 293 Conn. 934, 981 A.2d 1077 (2009), this court held that there was sufficient evidence from which the jury could conclude that a Trumbull Shopping Park security guard had authority to ban the defendant from the mall. The court noted the testimony of the mall's operations manager that he considered the security guards to be his agents. The court concluded that evidence supported the jury's finding that the banning guidelines, which provided in part that security could only ban individuals for the remainder of the business day, were suggestions rather than mandatory procedures that security guards must follow. Id., 584–86. The court also stated that it was reasonable for the jury to infer that the guard had implied authority to act, in that he was acting in the operations manager's best interest by ordering the defendant to leave the mall in response to patrons' complaints. Id., 587.