******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

STATE OF CONNECTICUT *v.*
MICHAEL J. MARSALA
(SC 20249)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

Convicted, after a jury trial, of the crime of criminal trespass in the first degree, the defendant appealed to the Appellate Court, claiming that the trial court improperly declined to instruct the jury on the infraction of simple trespass as a lesser included offense. The defendant's conviction stemmed from his conduct in entering and panhandling on shopping mall property despite having been previously banned from the property by mall security officers and having been told by a private duty police officer, S, that he would be arrested for trespassing if he entered the property again. At trial, the defendant claimed that the first degree criminal trespass statute (§ 53a-107 (a) (1)) requires that an order not to enter the property be communicated "by the owner of the premises or other authorized person" and that the state failed to prove that S was authorized to communicate such an order to the defendant. Following the close of evidence, the defendant requested a jury instruction on simple trespass as a lesser included offense of first degree criminal trespass, which the trial court denied. The defendant appealed to the Appellate Court, which affirmed the judgment of conviction. On the granting of certification, the defendant appealed to this court, claiming that the Appellate Court incorrectly determined, for purposes of *State* v. *Whistnant* (179 Conn. 576), that there was no evidence that could have permitted the jury to find him not guilty of first degree criminal trespass but also find him guilty of simple trespass. Specifically, the defendant claimed that the jury could have agreed with him that the state failed to prove that mall security personnel and S were authorized to ban him from mall property, and thus have found him not guilty of first degree criminal trespass, but nonetheless have found that the state proved that the defendant had been told multiple times that he was not allowed to enter the property to panhandle and thus have found him guilty of simple trespass. *Held* that the Appellate Court correctly concluded that the trial court properly declined the defendant's request to instruct the jury on simple trespass as a lesser included offense of first degree criminal trespass because the prerequisites set forth in *Whistnant* for obtaining a jury instruction on a lesser included offense were not satisfied; the jury could not consistently have found the defendant not guilty of first degree criminal trespass but guilty of simple trespass, as required by *Whistnant*, because the element of criminal and simple trespass requiring proof that the defendant knew he was not licensed or privileged to enter the property necessarily requires proof that he was not in fact licensed or privileged to enter, and, if the jury accepted the defendant's claim that the state had failed to prove that the security officers and S were authorized to ban him from entering the mall, there would have been no evidence permitting the jury to find that his entry at the time of his arrest was unlawful, an element of simple trespass.

Argued February 20—officially released September 16, 2020**

*Procedural History*

Substitute information charging the defendant with the crime of criminal trespass in the first degree, brought to the Superior Court in the judicial district of Ansonia-Milford, geographical area number twenty-two, and tried to the jury before *Markle, J.*; verdict and judgment of guilty, from which the defendant appealed to the Appellate Court, *Alvord, Moll* and *Eveleigh, Js.*, which affirmed the trial court's judgment, and the defen-

dant, on the granting of certification, appealed to this court. *Affirmed.*

*Laila M. G. Haswell,* senior assistant public defender, for the appellant (defendant).

*Timothy F. Costello,* assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley,* state's attorney, *Matthew R. Kalthoff,* assistant state's attorney, and *Laurie N. Feldman* and *Brett R. Aiello,* deputy assistant state's attorneys, for the appellee (state).

*Opinion*

MULLINS, J. In this certified appeal, the defendant, Michael J. Marsala, appeals from the judgment of the Appellate Court affirming his judgment of conviction, rendered after a jury trial, for criminal trespass in the first degree in violation of General Statutes § 53a-107.[1] He challenges the Appellate Court's conclusion that the trial court properly declined to instruct the jury on the infraction of simple trespass; see General Statutes § 53a-110a;[2] as a lesser included offense of criminal trespass in the first degree. Because we agree with the Appellate Court's conclusion that the prerequisites set forth in *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980), for obtaining a jury instruction on a lesser included offense were not satisfied in the present case,[3] we affirm the judgment of the Appellate Court.[4]

The record reveals the following relevant facts, which the jury reasonably could have found, and procedural history. The Connecticut Post Mall of the Centennial Collection, formerly known as the Westfield Connecticut Post (mall), is located at 1201 Boston Post Road in Milford (mall property). At all relevant times, the mall was owned by the Westfield Corporation (Westfield). Westfield contracted with an independent entity, Professional Security Consultants (PSC), to provide security services on mall property. During the holiday shopping season, November through January, the mall hires Milford police officers to assist PSC with security and to conduct traffic control. While working these "private duty" jobs, the officers are essentially part of PSC's security staff; they report directly to PSC and assist PSC employees with enforcing the mall's security policies. For their work on these private duty jobs, the officers are paid by the city of Milford, which is, in turn, reimbursed by the mall.

By November, 2015, the defendant was well known to PSC. He was frequently seen in mall parking lots "panhandling," i.e., asking customers for money. Panhandling is prohibited on mall property. Prior to November 28, 2015, PSC security official Wilfred Castillo received ten to fifteen complaints about the defendant's panhandling. On several of these occasions, Castillo confronted the defendant and told him that "panhandling isn't allowed on [mall] property, and that he would have to leave." In response to Castillo's directives, the defendant would leave the mall property without incident.

PSC also had a "ban notice," dated July 9, 2015, on file in its office for the defendant. The ban notice stated that the defendant had been banned from mall property for one year. Under PSC policy, ban notices can be reviewed and approved (or potentially reversed) by PSC's director of security, Thomas Arnone, or by Arnone's assistant, as well as by the general manager

of the mall, Dan Kiley.[5] Based on the existence of this ban notice, the defendant was not permitted to be on mall property.

On November 27, 2015, Officer Joanna Salati of the Milford Police Department was working a private duty job when she saw the defendant panhandling on mall property. She contacted PSC on her radio and confirmed that the defendant previously had been banned. Salati approached the defendant and told him that "he had to leave . . . because he was banned from being on mall property" and that "the next time he's caught on mall property, he's going to be arrested" for trespassing. Salati decided not to arrest the defendant for trespassing at that time because "it was too busy." The defendant left the property in response to Salati's directive.

The following day, November 28, 2015, Salati again saw the defendant on mall property "approaching customers." When the defendant saw Salati walking toward him, he began walking "quickly" away from her. Salati eventually caught up with the defendant and arrested him.

The defendant was charged with criminal trespass in the first degree in violation of § 53a-107 (a) (1). As the basis for this charge, the state alleged, in an amended long form information, that, "on November 28, 2015 . . . [the defendant], knowing that he was not licensed or privileged to do so, did enter . . . [mall property] after having been directed not to return to the property by authorized mall security personnel and/or authorized officers of the Milford Police Department . . . ." The defendant elected a trial by jury.

At trial, the parties' dispute centered around the element of criminal trespass in the first degree that requires the defendant's unlawful entry to have occurred "after an order to leave or not to enter [was] personally communicated to [the defendant] by the owner of the premises or other authorized person . . . ." General Statutes § 53a-107 (a) (1). As proof that such an order had been communicated to the defendant prior to his entry onto mall property on November 28, 2015, the state relied on Salati's testimony that, on November 27, 2015, she told the defendant that "he had to leave . . . because he was banned from being on mall property" and that "the next time he's caught on mall property, he's going to be arrested" for trespassing.

The crux of the defense was that § 53a-107 (a) (1) requires the order not to enter to be communicated "by the owner of the premises or other *authorized* person," and the state failed to prove that Salati had been authorized to communicate such an order to the defendant. (Emphasis added.) The defendant pointed out that the state called no witnesses from Westfield to testify about the authority it had granted to PSC or the private duty

officers working for PSC to ban individuals from entering mall property. The defendant also introduced into evidence a document titled "Enforcement—Banning Procedures: Use of Physical Force" and subtitled "Lesson Plan 9" (lesson plan) that PSC's corporate office had prepared for purposes of training PSC's staff. The lesson plan provides, under the heading of "Temporary Suspension": "Suspend the privilege of being on the property for an amount of time that is determined by the severity of the incident and local and state ordinances. Any suspension for more than [twenty-four] hours must [be] approved [by] the [c]enter [m]anager." The lesson plan further provides, under the heading of "Reason to [S]uspend": "1. Only those individuals who have committed a crime at [the] [s]hopping [c]enter will be considered for banning and as in compliance with local, state and federal ordinances. 2. The [d]irector of [s]ecurity, [a]ssistant [d]irector of [s]ecurity or [s]ecurity [s]upervisor can only temporarily ban suspects for the remainder of the business day."

Relying on the lesson plan, defense counsel argued during closing argument that the state never proved that Westfield had authorized PSC to ban violators of the panhandling prohibition from mall property for one year (as reflected in the July 9, 2015 ban notice), or for any period of time longer than the remainder of the business day. Defense counsel further argued that this policy extended to Salati because Salati was working in a private capacity, assisting PSC's staff, and that her November 27, 2015 order to stay off mall property indefinitely exceeded her authority as set forth in the lesson plan.

The state, for its part, introduced evidence that PSC, and by extension Salati, did indeed have authority to ban people from mall property. Arnone, PSC's director of security, testified that PSC was authorized to ban people for periods of six months or one year and that PSC issued between 360 and 370 such bans per year. Arnone further testified that the lesson plan was not a "complete statement" of PSC's banning authority and that he had a verbal understanding with Kiley, the mall's general manager, whereby PSC's banning authority extended beyond what was set forth in the lesson plan.

Following the close of evidence, the defendant filed a written request for a jury instruction on the infraction of simple trespass, which he asserted was a lesser included offense of criminal trespass in the first degree.[6] The state opposed the instruction on the grounds that (1) the second prong of *Whistnant* was not satisfied; see footnote 3 of this opinion; because simple trespass requires proof of an element that criminal trespass in the first degree does not, namely, that the defendant enter or remain on the premises "without intent to harm any property"; General Statutes § 53a-110a (a); and (2) infractions cannot be submitted to the jury as lesser

included offenses of crimes. The trial court agreed with both of the state's arguments and denied the defendant's request for the instruction.

The jury subsequently found the defendant guilty of criminal trespass in the first degree. The court imposed a sentence of one year incarceration, execution suspended after four months, followed by two years of conditional discharge.

The defendant appealed to the Appellate Court, claiming that the trial court should have instructed the jury on the infraction of simple trespass as a lesser included offense. See *State* v. *Marsala*, 186 Conn. App. 1, 2–3, 7, 198 A.3d 669 (2018). In rejecting this claim, the Appellate Court concluded that the defendant's requested instruction failed the third and fourth elements of *Whistnant*; see footnote 3 of this opinion; because there was no reasonable view of the evidence that permitted the jury consistently to find the defendant not guilty of criminal trespass in the first degree but guilty of simple trespass.[7] See *State* v. *Marsala*, supra, 21. More specifically, the Appellate Court determined that, "if the jury was to reject the evidence presented by the state that the defendant received an order not to enter from an authorized person"; id., 20; the jury necessarily also would have had to find that the state failed to prove the "knowledge" element of simple trespass because "there was no other evidence, introduced by either the state or the defendant, from which the jury could have found that the defendant knew he was not privileged to enter or remain on mall property." Id., 19–20. Accordingly, the Appellate Court concluded that the defendant was not entitled to an instruction on simple trespass as a lesser included offense of criminal trespass in the first degree and affirmed his conviction.[8] Id., 21. This certified appeal followed.[9]

The defendant claims that the Appellate Court incorrectly determined, for purposes of the third and fourth prongs of *Whistnant*, that there was no evidence that permitted the jury to consistently find him not guilty of criminal trespass in the first degree but guilty of simple trespass. Specifically, the defendant argues that the jury could have agreed with him that the state failed to prove that PSC and Salati were authorized to ban him from mall property, and thus found him not guilty of criminal trespass in the first degree, but nonetheless found that the state proved that the defendant had been told multiple times that he was not allowed to enter the property to panhandle. The defendant also asserts that the jury could have credited the testimony from Salati that the defendant tried to leave the property when Salati saw him on the day of the incident. The defendant contends that this evidence provided the jury with an independent basis to find, for purposes of the simple trespass statute, that the defendant knew he was not licensed or privileged to be panhandling on mall

property.

The state responds that, under the facts of this case, if the jury found that the state had failed to prove that PSC and Salati were authorized to exclude the defendant from mall property, it could not then have found that the defendant knew he was not permitted on the property on November 28, 2015. The state emphasizes that, in order to establish that the defendant knew his entry was unlawful for purposes of simple trespass, it was required to prove not just "the defendant's mere *belief*" that his entry was unlawful, but that it was *in fact* unlawful. (Emphasis in original.) The state argues that, if the jury found that the state never proved that PSC and Salati were authorized to ban the defendant, there was no other evidence in the record upon which the jury could have found that he had in fact been banned and, therefore, that his entry on November 28, 2015, was unlawful.

We note at the outset that, as the state's brief acknowledges, the element of criminal and simple trespass requiring proof that the defendant knew he was not licensed or privileged to enter the property necessarily requires proof that he was not in fact licensed or privileged to enter. See *State* v. *Harper*, 167 Conn. App. 329, 338, 143 A.3d 1147 (2016) ("to prove that the defendant knew that he did not have a license or privilege to be at [the property], the state was necessarily required to prove that, in fact, he did not have such a right or privilege"); see also General Statutes § 53a-3 (12) ("[a] person acts 'knowingly' with respect to . . . a circumstance described by a statute defining an offense when he is aware . . . *that such circumstance exists*" (emphasis added)). We agree with the state that, if the jury had found that the state never proved that PSC and Salati were authorized to ban the defendant, there was no other evidence in the record upon which the jury could have found that the defendant did not have license or privilege to enter mall property on November 28, 2015. Accordingly, we conclude that the defendant's requested instruction fails the fourth element of *Whistnant*.[10]

We begin with the general principles governing our review. The defendant's claim that he had improperly been denied an instruction on a lesser included offense "requires us, on appeal, to review the facts in the light most favorable to the defendant. . . . Whether one offense is a lesser included offense of another presents a question of law. . . . Accordingly, our review is de novo. . . .

"The applicable legal principles are well established. A defendant is entitled to an instruction on a lesser [included] offense if . . . the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described

in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser. *State* v. *Whistnant*, [supra, 179 Conn. 588]." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 289 Conn. 742, 758–59, 961 A.2d 322 (2008). Because we conclude in the present case that the defendant's requested instruction fails the fourth element of *Whistnant*, we limit our analysis to that element.

This court previously elaborated on the fourth element of *Whistnant* and noted that "[t]he fourth prong of *Whistnant* specifically requires that the 'proof' be 'sufficiently in dispute.' " *State* v. *Manley*, 195 Conn. 567, 579, 489 A.2d 1024 (1985). This court further explained: "Such proof is sufficient when it is marked by [a] quality [such as] to meet with the demands, wants or needs of a situation . . . . In the *Whistnant* context, therefore, the proof is sufficiently in dispute [when] it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty [of] the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal. . . . Moreover, the trial court, in making its determination whether the proof is sufficiently in dispute, [although] it must carefully assess all the evidence whatever its source, is not required to put the case to the jury on a basis [of a lesser included offense] that essentially indulges and even encourages speculations as to [a] bizarre reconstruction [of the evidence]." (Citations omitted; internal quotation marks omitted.) Id., 579–80.

We therefore begin by identifying the element that differentiates simple trespass from criminal trespass in the first degree. We then determine whether, in light of the evidence introduced at trial, that element was sufficiently in dispute so as to permit the jury consistently to have found the defendant not guilty of criminal trespass in the first degree but guilty of simple trespass.

"A person is guilty of simple trespass when, knowing that such person is not licensed or privileged to do so, such person enters or remains in or on any premises . . . ." General Statutes § 53a-110a (a). To obtain a conviction for criminal trespass in the first degree, the state must prove these same elements, as well as the additional element that the defendant's unlawful entry occurred "after an order to leave or not to enter [is] personally communicated to [the defendant] by the owner of the premises or other authorized person

. . . ." General Statutes § 53a-107 (a) (1); see *State* v. *Kinchen*, 243 Conn. 690, 703, 707 A.2d 1255 (1998) (criminal trespass in first degree under § 53a-107 (a) (1) requires proof "(1) that the defendant, knowing he was not privileged or licensed to do so, entered or remained in [or on the premises]; and (2) that the defendant committed that act after an order to leave or not to enter had been personally communicated to him by the owner or other authorized person" (internal quotation marks omitted)).

As previously noted, the state attempted to prove this element of criminal trespass in the first degree by introducing Salati's testimony that she told the defendant on November 27, 2015, that "he had to leave . . . because he was banned from being on mall property" and that "the next time he's caught on mall property, he's going to be arrested" for trespassing. The defendant did not dispute that Salati had said this to him on November 27, 2015. Instead, he attempted to place this element in dispute by establishing reasonable doubt as to whether Salati was an "authorized person," within the meaning of § 53a-107 (a) (1), to communicate such an order to him.

As support for this defense, the defendant introduced the lesson plan into evidence. That document provided that "[a]ny suspension for more than [twenty-four] hours must [be] approved [by] the [c]enter [m]anager"; "[o]nly those individuals who have committed a crime . . . will be considered for banning"; and PSC personnel "can only temporarily ban suspects for the remainder of the business day." Defense counsel relied on the lesson plan to argue that PSC and, by extension, Salati were authorized to ban violators of the panhandling prohibition only for the remainder of the business day and, therefore, that Salati's November 27, 2015 order never to return exceeded her authority.

Even if this evidence placed in dispute the differentiating element of criminal trespass in the first degree, it would not have provided the jury with a basis to find the defendant not guilty of that charge but still find him guilty of simple trespass. This is because, under the unique circumstances of the present case, if the jury credited this defense and found that the state failed to prove that PSC and Salati were authorized to ban the defendant from mall property for longer than the remainder of the business day, there was no other evidence in the record to permit the jury rationally to find that, when the defendant entered mall property the next day, on November 28, 2015, he was not "licensed or privileged to do so . . . ." General Statutes § 53a-110a (a). Our conclusion in this regard is illuminated by the state's theory of guilt at trial.

The only theory advanced by the state for why the defendant did not have license or privilege to enter mall property on November 28, 2015, was that he previously

had been banned from the property. The state never pursued the theory that the defendant's entry was unlawful because he intended to engage in the unauthorized activity of panhandling.[11] It is well settled that the state cannot obtain a conviction based on a theory that it never pursued at trial. See *State* v. *Carter*, 317 Conn. 845, 853–54, 120 A.3d 1229 (2015); *State* v. *Fourtin*, 307 Conn. 186, 208, 211, 52 A.3d 674 (2012). Accordingly, the state could have proved the "unlawful entry" element of both criminal trespass in the first degree and simple trespass only by establishing that a valid ban was in fact in place against the defendant on November 28, 2015, so as to render his entry onto mall property on that date unlawful. See, e.g., *State* v. *Fourtin*, supra, 211 (determination of whether evidence was sufficient to sustain conviction must be made "in light of the state's theory of guilt at trial").

In light of the evidence introduced at trial, however, if the jury were to find that the state failed to prove that PSC and Salati were authorized to ban the defendant for longer than the rest of the business day, the jury could not consistently then have found that there was a valid ban in place against the defendant when he entered mall property on November 28, 2015. The jury would have been required to find that the July 9, 2015 ban notice, which purported to ban the defendant for one year, was invalid. There was no evidence that the ban had been issued by anyone other than an employee of PSC. The ban notice was submitted as an exhibit for identification purposes only, and neither party introduced any evidence as to who had issued the ban or whether the issuer had authority to do so. Although Arnone testified that ban notices are generally submitted to Kiley, the mall's general manager, to be "finalized," there was no evidence that this particular ban notice was submitted for review, or ever approved, by Kiley.

Therefore, there was no way that the jury could have credited the defendant's defense that bans issued by PSC personnel were not authorized beyond the business day on which they were issued, yet also have found that the July 9, 2015 ban notice was valid more than four months later, on November 28, 2015, without resorting to improper speculation as to whether it had been either issued or approved by someone outside of PSC with authority to do so. See *State* v. *Manley*, supra, 195 Conn. 579–80 (*Whistnant* does not permit instruction to be given "on [an evidentiary] basis . . . that essentially indulges and even encourages speculations" (internal quotation marks omitted)). Likewise, insofar as Salati's communication to the defendant on November 27, 2015, could be construed as its own independent ban from mall property, any such ban (under the defendant's theory) would no longer have been in effect when the defendant entered mall property the next day on November 28, 2015.

Accordingly, if the jury accepted the defendant's defense that the state failed to prove that PSC and Salati were authorized to ban him indefinitely, there was no evidence permitting the jury to find that his entry on November 28, 2015, was unlawful. Because unlawful entry is an element of simple trespass, the jury could not consistently have found the defendant not guilty of criminal trespass in the first degree but guilty of simple trespass, as required by the fourth element of *Whistnant*. Put another way, the dispute at trial was not about the differentiating element of criminal trespass in the first degree—whether an order not to enter had been personally communicated to the defendant by an authorized person—but the common element of whether the defendant's entry was unlawful. Under such circumstances, the jury cannot rationally convict *only* on the greater offense, and no lesser included instruction is warranted. See *State* v. *Langley*, 128 Conn. App. 213, 233–34, 16 A.3d 799 (defendant was not entitled to instruction on criminally negligent homicide as lesser included offense of murder or of manslaughter in first degree, when evidence permitted jury to find either that defendant intentionally lit victim on fire or had "nothing to do whatsoever with [his] injuries," because "[s]uch competing theories do not revolve around the [differentiating] element of intent but the defendant's culpable conduct more generally"), cert. denied, 302 Conn. 911, 27 A.3d 371 (2011); see also *United States* v. *Whitman*, 887 F.3d 1240, 1247 (11th Cir. 2018) ("[w]hen a defendant relies on an exculpatory defense that, if believed, would lead to acquittals on both the greater and lesser charges," that defendant is not entitled to instruction on lesser offense (internal quotation marks omitted)), cert. denied,    U.S.   , 139 S. Ct. 1276, 203 L. Ed. 2d 289 (2019); *United States* v. *Nur*, 799 F.3d 155, 159 (1st Cir. 2015) (lesser included offense instruction was inappropriate when "the scope of rational dispute [is limited] to elements common to the two offenses").

The defendant's arguments for why the jury could have found that the state failed to prove that PSC and Salati were authorized to ban people for more than the rest of the business day, but nonetheless found him guilty of simple trespass, are unavailing. First, the defendant contends that the jury could have credited Salati's testimony that the defendant began walking "quickly" away when she started to approach him on November 28, 2015, as if to try to escape, as well as Castillo's testimony that he told the defendant on numerous, prior occasions that "panhandling isn't allowed on [mall] property and that he would have to leave." Although this evidence may suggest that the defendant *subjectively believed* he was not licensed or privileged to be on mall property, it is insufficient as a matter of law to support the inference that he *in fact* was not licensed or privileged to be there. See *State* v. *Harper*, supra, 167 Conn.

App. 341–42 (holding that there was insufficient evidence to sustain conviction for criminal trespass in third degree and observing that, "even if [the defendant's evasive conduct upon encountering police] could have supported the inference that the defendant . . . did not believe that [he] had a license or privilege to be at [the premises] that evening, such . . . conduct did not establish that [he] in fact had no license or privilege to be there"). Therefore, if the jury credited the defendant's defense at trial, that does not provide an independent basis for finding his entry to be unlawful.

Moreover, we agree with the state that the jury could not properly have relied on Castillo's testimony that he had many times told the defendant to leave because of his panhandling as proof that the defendant's entry on November 28, 2015, was unlawful because it would have been inconsistent with the theories advanced by the parties at trial. As previously explained; see footnote 11 of this opinion and accompanying text; the state's theory of guilt was that the defendant was not licensed or privileged to enter mall property on November 28, 2015, because he previously had been banned, not because he had entered the property in order to panhandle. It was the defendant's initial act of entering the property, as distinct from entering it to engage in an unauthorized activity, that constituted the trespass.[12] See *State* v. *Belton*, 190 Conn. 496, 500, 461 A.2d 973 (1983) ("[t]o enter unlawfully contemplates an entry which is accomplished unlawfully, [whereas] to remain unlawfully contemplates an initial legal entry which becomes unlawful at the time that the actor's right, privilege or license to remain is extinguished"). In any event, for the reasons explained previously in this opinion, if the jury accepted the defendant's theory that PSC lacked authority to ban people indefinitely, it could not rationally then have found that these admonishments from Castillo, a PSC employee, rendered the defendant's entry unlawful on November 28, 2015.

Finally, the defendant argues that the jury reasonably could have found that Salati's communication to the defendant on November 27, 2015, did not amount to an "order" not to enter mall property within the meaning of § 53a-107 (a) (1) but was nonetheless sufficient to provide the defendant with the requisite knowledge that he was not permitted to enter the property the following day. We disagree.

Section 53a-107 (a) (1) requires the defendant to have entered the property in defiance of a prior "order . . . not to enter" communicated by an authorized person. Because the term "order" is not defined in the statute, we look to the dictionary to ascertain its commonly approved meaning. See, e.g., *State* v. *Drupals*, 306 Conn. 149, 161–62, 49 A.3d 962 (2012); see also General Statutes § 1-1 (a). The word "order" is defined as "[a]n authoritative indication to be obeyed; a command or

direction." American Heritage College Dictionary (4th Ed. 2007) p. 979. This definition unquestionably encompasses Salati's November 27, 2015 communication to the defendant. Salati testified that she approached the defendant while in full police uniform and told him that "he had to leave . . . because he was banned from being on mall property" and that "the next time he's caught on mall property, he's going to be arrested" for trespassing. Salati further testified that she "could [not] have been more clear" about this. Salati's November 27, 2015 communication was undoubtedly an "order" not to enter mall property. The jury could not reasonably have concluded otherwise.[13]

Accordingly, in light of the evidence introduced by the parties at trial, we can exclude as a matter of law the possibility that the jury rationally could have found the defendant guilty only of simple trespass, and not criminal trespass in the first degree. The trial court properly denied the defendant's request for an instruction on the lesser included offense.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** September 16, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 53a-107 provides in relevant part: "(a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person . . . ."

[2] General Statutes § 53a-110a provides: "(a) A person is guilty of simple trespass when, knowing that such person is not licensed or privileged to do so, such person enters or remains in or on any premises without intent to harm any property.

"(b) Simple trespass is an infraction."

[3] Under *State* v. *Whistnant*, supra, 179 Conn. 576, "[a] defendant is entitled to an instruction on a lesser [included] offense if . . . the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser." Id., 588.

[4] Because we conclude that the defendant failed to satisfy *Whistnant*, we do not reach the state's alternative ground for affirmance, in which the state contends that the defendant would not have been entitled to an instruction on the infraction of simple trespass even if he had satisfied *Whistnant* because infractions are categorically prohibited from being submitted to the jury as lesser included offenses of crimes.

[5] There was no evidence presented at the defendant's trial about the circumstances that led to this purported July 9, 2015 one year ban. The ban notice was submitted as an exhibit for identification purposes only, and neither party introduced any evidence as to who had issued the ban, whether the duration of the ban was communicated to the defendant, or whether the decision to issue the ban had been reviewed and approved by Kiley or anyone else outside of PSC.

[6] The defendant requested the following instruction: "If you have unanimously found the defendant not guilty of the crime of criminal trespass in

the first degree, you shall then consider the lesser offense of simple trespass. Do not consider the lesser offense until you have unanimously acquitted the defendant of the greater offense.

"A person is guilty of simple trespass when, knowing that he is not licensed or privileged to do so, he enters any premises without intent to harm any property. For you to find the defendant guilty of simple trespass, the state must prove the following elements beyond a reasonable doubt: first that he entered the premises. Premises is not defined in the law so it has the common meaning. The second element is that he entered knowing he was not licensed or privileged to do so. To be licensed or privileged the defendant must have either consent from the owner of the premises or other authorized person or have some other right to be on the premises. A person acts knowingly with respect to conduct when he is aware that his conduct is of such nature or such circumstances exist." (Internal quotation marks omitted.) *State* v. *Marsala*, 186 Conn. App. 1, 5–6, 198 A.3d 669 (2018).

[7] There was no dispute that the defendant had made a proper request for the instruction and, therefore, that the first element of *Whistnant* was satisfied. See *State* v. *Whistnant*, supra, 179 Conn. 588. With respect to the second element, which requires a showing that "it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser"; id.; the Appellate Court concluded that this element was satisfied because simple trespass does not require proof of an element that criminal trespass in the first degree does not. See *State* v. *Marsala*, supra, 186 Conn. App. 9–10. Contrary to the trial court's determination, the Appellate Court concluded that the "without intent to harm any property" language of the simple trespass statute; General Statutes § 53a-110a (a); is not an element of the offense that the state must prove beyond a reasonable doubt. *State* v. *Marsala*, supra, 9–10. The state has not challenged this aspect of the Appellate Court's decision on appeal to this court.

[8] The Appellate Court did not reach the state's alternative ground for affirmance that infractions can never be submitted to the jury as lesser included offenses of crimes. See *State* v. *Marsala*, supra, 186 Conn. App. 8 n.8.

[9] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court [correctly] conclude that the defendant was not entitled to an instruction on the infraction of simple trespass as a lesser included offense of criminal trespass in the first degree?" *State* v. *Marsala*, 330 Conn. 964, 199 A.3d 1079 (2019).

[10] We therefore need not address the third element of *Whistnant* in this case. We note, however, that this court has observed in other cases that, "[d]espite being conceptually distinct parts of the *Whistnant* formulation, the third and fourth prongs are subject to the same evidentiary analysis . . . [and, therefore, can be analyzed] simultaneously." (Internal quotation marks omitted.) *State* v. *Jones*, 289 Conn. 742, 762, 961 A.2d 322 (2008).

[11] The state charged the defendant with trespass based on the fact that he "enter[ed]" mall property after having been ordered not to do so. Throughout the trial, the state's focus in establishing that the entry was unlawful was on the fact that the defendant previously had been banned. When defense counsel objected to the prosecutor's attempt to elicit evidence of the defendant's prior instances of panhandling on mall property on the ground that such evidence was unduly prejudicial, the prosecutor explained the probative value of that evidence: "Again, one of the elements of this particular crime is that the defendant unlawfully entered the property. The entry was unlawful because he had been banned from the property. That ban was necessary because of the solicitation."

The prosecutor also elicited from Arnone and Castillo the fact that, based on the July 9, 2015 ban notice stating that the defendant had been banned for one year, the defendant was not "permitted to be on mall property" when he entered on November 28, 2015. Finally, after eliciting from Castillo that, on the prior occasions when the defendant was found panhandling, Castillo would simply tell him "to leave" mall property because panhandling was not allowed, the prosecutor then elicited the following:

"[The Prosecutor]: If you could just look up when you're done. Does [the ban notice] refresh your recollection as to what date the defendant was banned from mall property?

"[Castillo]: Yeah. Yes, it was July 9, 2015.

"[The Prosecutor]: And for how long was that ban in place?

"[Castillo]: One year.

"[The Prosecutor]: *How does it change the status of an individual on mall property once they have been banned? How does that change your*

*interaction with him?*

"[Castillo]: *My interaction is different because he is trespassing, and our policy is to contact police when there is a trespasser.*" (Emphasis added.)

Nor did the prosecutor contend during closing argument that the defendant's entry was unlawful because he intended to panhandle. Indeed, the prosecutor emphasized: "[The defendant] may not have liked the fact that he wasn't allowed to be on [mall] property, and, in fact, we don't have to prove in this case whether the reasons that he wasn't allowed on mall property were proper or *even what those reasons were.*" (Emphasis added.) Finally, consistent with the state's theory of unlawful entry, the trial court instructed the jury that it must determine whether the defendant "unlawfully *entered*" mall property. (Emphasis added.)

[12] The defendant contends that the "theory of the case doctrine does not preclude the defendant from making lesser included offense requests that are not precisely aligned with a prosecution's theory at trial." We disagree that the theory of the case doctrine is irrelevant to our application of the fourth element of *Whistnant* under the circumstances of the present case.

The fourth *Whistnant* element, which requires the jury to consistently be able to find the defendant not guilty of the greater offense but guilty of the lesser, is in place in order "to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal." (Internal quotation marks omitted.) *State* v. *Manley*, supra, 195 Conn. 579. Because the state cannot sustain a conviction on the basis of a theory of guilt that it never presented; see *State* v. *Fourtin*, supra, 307 Conn. 211; it cannot be said that the jury could "consistently" find the defendant not guilty of the greater offense but guilty of the lesser for purposes of the fourth element of *Whistnant*, if the only way for the jury to find that the state proved the elements of the lesser offense would be to adopt a theory of guilt as to those elements that the state never presented at trial.

[13] As the defendant notes in his brief, defense counsel also questioned Salati's credibility and urged the jury to disregard her testimony because she had shown a propensity in the past to target the defendant. The defendant, however, did not offer any evidence to contravene the substance of Salati's testimony that she unequivocally ordered the defendant, on November 27, 2015, not to reenter mall property. Defense counsel merely made an unsubstantiated argument regarding her general credibility. We conclude that this is insufficient to place the differentiating element of criminal trespass in the first degree in sufficient dispute so as to warrant an instruction on a lesser included offense. See *United States* v. *Whitman*, supra, 887 F.3d 1246–47 ("[in the absence of] any evidence to support the bare assertion of [a defendant's] lawyer that the government failed to prove an element of the greater offense, the trial court [i]s not required to instruct the jury about lesser included offenses" (internal quotation marks omitted)).

---